## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ELECTRONIC PRIVACY INFORMATION CENTER
1718 Connecticut Avenue, N.W., Suite 200
Washington, D.C. 20009,

     Plaintiff,

     v.

FEDERAL TRADE COMMISSION,
600 Pennsylvania Avenue, N.W.,
Washington, D.C. 20580

     Defendant.

Civ. Action No. __18-942____

## COMPLAINT FOR INJUNCTIVE RELIEF

1.     This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for injunctive and other appropriate relief to secure the release of agency records requested by Plaintiff Electronic Privacy Information Center ("EPIC") from Defendant Federal Trade Commission ("FTC").

2.     EPIC challenges the FTC's failure to make a timely decision concerning EPIC's request for the Facebook assessments, reports, and related records required by the 2012 FTC Consent Order,[1] as well as the agency's failure to release all responsive and non-exempt records. EPIC seeks injunctive and other appropriate relief.

---

[1] Consent order, *In the Matter of Facebook, Inc.*, Docket No. C-4365 (Federal Trade Commission July 27, 2012), https://www.ftc.gov/sites/default/files/documents/cases/2012/08/120810facebookdo.pdf [hereinafter the "2012 FTC Consent Order" or "Final Order"].

## Jurisdiction and Venue

3.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331

and 5 U.S.C. §§ 552(a)(6)(E)(iii) and 552(a)(4)(B). This Court has personal jurisdiction over

Defendant FTC.

4.      Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B).

## Parties

5.      Plaintiff EPIC is a nonprofit organization, incorporated in Washington, D.C., established

in 1994 to focus public attention on emerging privacy and civil liberties issues. Central to EPIC's

mission is oversight and analysis of government activities. EPIC has also brought numerous

complaints and petitions to the Federal Trade Commission concerning business practices that

implicate consumer privacy. EPIC's Advisory Board includes distinguished experts in law,

technology, and public policy. EPIC routinely disseminates information to the public through the

EPIC website, the EPIC Alert, and various other news organizations. EPIC is a representative of

the news media. *EPIC v. Dep't of Def.*, 241 F. Supp. 2d 5, 15 (D.D.C. 2003).

6.      Defendant FTC is a federal agency within the meaning of the FOIA, 5 U.S.C. § 552(f)(1).

Defendant FTC is headquartered in Washington, D.C.

## Facts

### The 2012 FTC Consent Order Against Facebook

7.      From 2009 to 2011, EPIC and a coalition of consumer organizations pursued several

complaints with the Federal Trade Commission ("FTC") alleging, among other points, that

Facebook had changed user privacy settings and disclosed the personal data of users to third

parties without the consent of users.[2] EPIC had conducted extensive research and documented

---

[2] *In re Facebook*, EPIC.org, https://epic.org/privacy/inrefacebook/.

the instances of Facebook overriding users' privacy settings to reveal personal information and to disclose, for commercial benefit, user data, and the personal data of friends and family members, to third parties without their knowledge or affirmative consent.[3]

8.      EPIC and the consumer privacy organizations stated at the time:

> This complaint concerns material changes to privacy settings made by Facebook, the largest social network service in the United States, which adversely impact users of the Facebook service. Facebook's changes to users' privacy settings disclose personal information to the public that was previously restricted. Facebook's changes to users' privacy settings also disclose personal information to third parties that was previously not available. These changes violate user expectations, diminish user privacy, and contradict Facebook's own representations. These business practices are Unfair and Deceptive Trade Practices, subject to review by the Federal Trade Commission (the "Commission") under section 5 of the Federal Trade Commission Act.[4]

9.      In response to the complaints from EPIC and consumer privacy organizations, the FTC issued a Preliminary Order against Facebook in 2011 and then a Final Order in 2012.[5] In the press release accompanying the settlement, the FTC stated that Facebook "deceived consumers by telling them they could keep their information on Facebook private, and then repeatedly allowing it to be shared and made public."[6]

10.     Under the proposed settlement, Facebook is barred from misrepresenting its privacy and security practices, as well as its compliance with any privacy program; is required to give its users a clear and prominent notice and obtain their affirmative express consent before sharing their information; is required to remove user information within 30 days after the user has

---

[3] *FTC Facebook Settlement*, EPIC.org, https://epic.org/privacy/ftc/facebook/.
[4] EPIC, et al, *In the Matter of Facebook, Inc.* (Complaint, Request for Investigation, Injunction, and Other Relief) 1 (Dec. 17, 2009), https://epic.org/privacy/inrefacebook/EPIC-FacebookComplaint.pdf.
[5] *In the Matter of Facebook, Inc., a corporation*, Fed. Trade Comm'n, https://www.ftc.gov/enforcement/cases-proceedings/092-3184/facebook-inc.
[6] Press Release, Fed. Trade Comm'n, Facebook Settles FTC Charges That It Deceived Consumers By Failing To Keep Privacy Promises (Nov. 29, 2011), https://www.ftc.gov/news-events/press-releases/2011/11/facebook-settles-ftc-charges-it-deceived-consumers-failing-keep.

deleted their account; is required to establish a comprehensive privacy program; and is required every two years for the next 20 years to obtain independent, third party audits certifying that it has a privacy program in place that complies with the Final Order.[7]

### Reporting Requirements of the 2012 FTC Consent Order

11.     The reporting requirements that the FTC imposed on Facebook are set out in more detail in the text of the Final Order. According to the 2012 Final Order, Facebook must establish and implement a comprehensive privacy program that "(1) address[es] privacy risks related to the development and management of new and existing products and services for consumers, and (2) protect[s] the privacy and confidentiality of covered information."[8]

12.     Moreover, Facebook is required to "obtain initial and biennial assessments and reports ("Assessments") from a qualified, objective, independent third-party professional."[9] This third-party professional must be approved by the FTC.[10]

13.     The reporting period for these Facebook Assessments include an initial assessment 180-days after the services of the order and biennially for the next 20 years.[11] Each Facebook Assessment includes: the privacy controls that Facebook has implemented and maintained during that period; an explanation of the appropriateness of these privacy controls, nature and scope of Facebook's activities, and sensitivity of the information; an explanation of how privacy controls meet the protections required by the Final Order; and a certification that the controls are operating with sufficient effectiveness in protecting privacy.[12]

---

[7] *Id.*
[8] 2012 FTC Consent Order, *supra* note 1, at 5
[9] *Id.* at 6.
[10] *Id.*
[11] *Id.*
[12] *Id.*

14.     Facebook was required to provide the initial assessment to the FTC after 10 days of the

Assessment's completion and must retain all subsequent biennial Assessments for the duration of

the order.[13] Facebook must provide the Assessments the FTC at the agency's request.[14]

### Cambridge Analytica

15.     On March 16, 2018, Facebook published a press release admitting the unlawful transfer

of data from 50 million user profiles to the firm Cambridge Analytica, which harvested the data

without user consent.[15] That estimated number has since increased to 87 million users, making it

one of the largest unlawful data transfers in Facebook's history.[16]

16.     From 2014–2016 Cambridge Analytica, a U.K.-based data analytics consulting firm that

offers services for political campaigns including President Trump's 2016 presidential campaign,

was able to collect the private information of approximately 270,000 users and their extensive

friend networks under the false pretenses as a research-driven application.[17] Facebook learned

about the data harvesting in 2015 but did not publicly acknowledge the incident until three years

later.[18]

17.     The transfer of data is a violation of the 2012 FTC Consent Order, which states that

Facebook "shall not misrepresent in any manner, expressly or by implication . . .  the extent to

which [Facebook] makes or has made covered information accessible to third parties; and the

---

[13] *Id.*

[14] *Id.* at 6–7.

[15] Press Release, Facebook, Suspending Cambridge Analytica and SCL Group from Facebook (Mar. 16, 2018), https://newsroom.fb.com/news/2018/03/suspending-cambridge-analytica/ [hereinafter Facebook Cambridge Analytica Press Release].

[16] Press Release, Facebook, An Update on Our Plans to Restrict Data Access on Facebook, Facebook.com (Apr. 4, 2018), https://newsroom.fb.com/news/2018/04/restricting-data-access/.

[17] *See* Danny Hakim & Matthew Rosenberg, *Data Firm Tied to Trump Campaign Talked Business With Russians*, New York Times (Mar. 17, 2018), https://www.nytimes.com/2018/03/17/us/politics/cambridge-analytica-russia.html.

[18] Facebook Cambridge Analytica Press Release, *supra* note 15.

steps [Facebook] takes or has taken to verify the privacy or security protections that any third party provides."[19]

18.     Facebook's Initial Assessment was due on April 13, 2013, and the subsequent reporting deadlines were due in 2015 and 2017. Cambridge Analytica engaged in the illicit collection of Facebook user data from 2014 to 2016, which is encompassed by the reporting period of the requested assessments.

19.     On March 20, 2018, EPIC filed a FOIA request with the FTC, described in more detail below, seeking the biennial Facebook Assessments and related records.

20.     On March 26, 2018, the FTC announced an investigation to determine whether Facebook violated the 2012 FTC Consent Order.[20] Acting Director Tom Pahl stated, "Companies who have settled previous FTC actions must also comply with FTC order provisions imposing privacy and data security requirements. Accordingly, the FTC takes very seriously recent press reports raising substantial concerns about the privacy practices of Facebook."[21]

21.     Following the Cambridge Analytica scandal, lawmakers swiftly demanded answers from Facebook. On April 10, 2018, Mark Zuckerberg testified publicly before a joint hearing before both the Senate Judiciary and Senate Commerce Committees and the next day testified before the House Energy and Commerce Committee.[22] Several state attorney generals have opened both

---

[19] 2012 FTC Consent Order, *supra* note 1, at 3–4.
[20] Press Release, Fed. Trade Comm'n, Statement by the Acting Director of FTC's Bureau of Consumer Protection Regarding Reported Concerns about Facebook Privacy Practices (Mar. 26, 2018), https://www.ftc.gov/news-events/press-releases/2018/03/statement-acting-director-ftcs-bureau-consumer-protection.
[21] *Id.*
[22] *See Facebook, Social Media Privacy, and the Use and Abuse of Data: Hearing Before the S. Comm. on the Judiciary and S. Comm. on Commerce, Sci., & Transp.*, 115th Cong. (2018), https://www.judiciary.senate.gov/meetings/facebook-social-media-privacy-and-the-use-and-abuse-of-data; *Facebook: Transparency and Use of Consumer Data: Hearing Before the H. Energy & Commerce Comm.*, 115th Cong. (2018), https://energycommerce.house.gov/hearings/facebook-transparency-use-consumer-data/.

joint and independent investigations into Facebook's involvement with Cambridge Analytica —

including Massachusetts, New York, New Jersey, and Missouri.[23] Moreover, it has been reported

that the Department of Justice's Special Counsel Robert Mueller has requested emails from

Cambridge Analytica as part of his investigation into the Russian interference of the 2016

presidential election.[24]

22.     Internationally, lawmakers in the United Kingdom, Europe, Australia, and Canada have

opened formal investigations into Cambridge Analytica.[25]

23.     On April 19, 2018, Senator Richard Blumenthal wrote to the Federal Trade Commission

to express his view that Facebook's business practices violated the consent order.[26]

24.     There is a clear public interest in the release the Facebook Assessments and related

records. The release of the full audits is crucial for Congress, the States Attorneys General, and

the public to evaluate how the Cambridge Analytica breach occurred and the FTC, Facebook,

---

[23] *See* Maura Healey (@MassAGO), Twitter (Mar. 17, 2018),
https://twitter.com/MassAGO/status/975052674818347013; Press Release, N.Y. Office of the Attorney
Gen., Statement From A.G. Schneiderman On Facebook/Cambridge Analytica (Mar. 20, 2018),
https://ag.ny.gov/press-release/statement-ag-schneiderman-facebookcambridge-analytica; Press Release,
N.J. Office of the Attorney Gen., Statement of Attorney General Gurbir S. Grewal on Facebook Data
Breach (Mar. 20, 2018), http://nj.gov/oag/newsreleases18/pr20180320d.html; *AG Hawley Issues
Investigative Demands to Facebook*, Mo. Attorney Gen. Josh Hawley (Apr. 2, 2018),
https://ago.mo.gov/home/breaking-news/ag-hawley-issues-investigative-demands-to-facebook.
[24] Rebecca Ballhaus, *Mueller Sought Emails of Trump Campaign Data Firm*, Wall Street Journal (Dec.
15, 2017), https://www.wsj.com/articles/mueller-sought-emails-of-trump-campaign-data-firm-
1513296899.
[25] *See* Statement, Information Commissioner's Office, ICO Statement: Investigation Into Data Analytics
For Political Purposes (Apr. 5, 2018), https://ico.org.uk/about-the-ico/news-and-events/news-and-
blogs/2018/04/ico-statement-investigation-into-data-analytics-for-political-purposes/; Antonio Tajani
(@EP_President), Twitter (Mar. 19, 2018), https://twitter.com/ep_president/status/975683240777453569;
Press Release, Office of the Privacy Comm'r of Canada, Privacy Commissioner Launches Facebook
Investigation (Mar. 20, 2018), https://www.priv.gc.ca/en/opc-news/news-and-announcements/2018/nr-
c_180320/; Statement, Office of the Australian Information Comm'r, Investigation into Facebook Opened
(Apr. 5, 2018), https://www.oaic.gov.au/media-and-speeches/statements/facebook-and-cambridge-
analytica#investigation-into-facebook-opened.
[26] Letter from Richard Blumenthal, Senator of Conn., to Hon. Maureen Ohlhausen, Acting Chairman,
Fed. Trade Comm'n (Apr. 19, 2018), https://www.blumenthal.senate.gov/imo/media/doc/04.19.2018%20-
%20FTC%20-%20Facebook%20Consent%20Decree.pdf.

and the selected independent third-party auditor fulfilled their obligation under the 2012 FTC

Consent Order.

## EPIC's FOIA Request

25.     On March 20, 2018, EPIC submitted a FOIA request ("EPIC's FOIA Request") to the

Federal Trade Commission ("FTC").

26.     EPIC's FOIA Request sought records, in the possession of the FTC, required by the 2012

FTC Consent Order. Specifically, EPIC sought:

(1) The 2013 Facebook Assessments;
(2) The 2015 Facebook Assessments;
(3) The 2017 Facebook Assessments;
(4) All records concerning the person(s) approved by the FTC to undertake the Facebook
    Assessment; and
(5) All records of communications between the FTC and Facebook regarding the
    Facebook Assessments.

27.     EPIC sought "news media" fee status under 5 U.S.C. § 552(4)(A)(ii)(II) and a waiver of

all duplication fees under 5 U.S.C. § 552(a)(4)(A)(iii).

28.     EPIC also sought expedited processing under 5 U.S.C. § 552(a)(6)(E)(v)(II).

29.     In letter dated March 29, 2018, the FTC FOIA Office acknowledged receipt of EPIC's

FOIA Request. The request was assigned reference number FOIA-2018-00666. The FTC granted

EPIC's request for expedited processing as well as a fee waiver.

30.     On April 17, 2018, Mr. Jonathan Hill from the FTC Office of the General Counsel sent

an e-mail to EPIC stating that the FTC is unable to respond to EPIC's FOIA Request within the

statutory 20-working day deadline. He purported to invoke an extension of the 20-working day

deadline citing "unusual circumstances" under 5 U.S.C. § 552(a)(6)(B)(iii). Mr. Hill stated that

EPIC's FOIA Request falls under two categories under the "unusual circumstances" statutory

exemption:

- The need to search for and collect the requested records from field facilities or other establishments that are separate from the office processing the request; and

- The need for consultation, which shall be conducted with all practicable speed, with another agency or two or more agency components having a substantial interest in the determination of the request or among two or more components of the agency having substantial subject matter interest therein.

Mr. Hill stated that EPIC may seek dispute resolution from the FTC FOIA Public Liaison Richard Gold, or from the Office of Government Information Services. He stated that the FTC will continue to process EPIC's FOIA Request and if EPIC would like to narrow the request to reduce necessary response time, to contact him.

31.     The April 17, 2018 email from the FTC to EPIC failed to provide "the date on which a determination is expected to be dispatched" as is required to invoke the "unusual circumstances" extension. 5 U.S.C. § 552(a)(6)(B)(i).

32.     On April 18, 2018, EPIC contacted Mr. Gold, FTC FOIA Public Liaison, asking whether EPIC could bifurcate the records request because EPIC did not believe that "unusual circumstances" applied to the first three categories of records requested — the 2013, 2015, and 2017 Facebook Assessments. EPIC also asked for a specific processing timeline for these records. Mr. Gold stated that he would look into this issue and respond the following day. Immediately after contacting Mr. Gold, EPIC also contacted Mr. Hill and raised the same issues stating that the "unusual circumstances" does not apply to the first category of records requested. Mr. Hill stated that EPIC can prioritize requests and do a rolling production but he could not provide assurance of an exact date for determination. EPIC stated that it would like to bifurcate EPIC's FOIA Request and prioritize the first three category of records for processing.

33.     In the course of the conversation, Mr. Hill indicated that the first three categories of records requested were posted on the FTC website as released documents from previous FOIA

requests.[27] The documents posted included the 2013, 2015, and 2017 Facebook Assessments as well as the 2012 Initial Compliance Report. Mr. Hill stated that the FTC is re-reviewing the records with "fresh eyes" and reprocessing them in light of the recent interest and an increase of requests for these records. When asked whether EPIC would receive the same documents posted on the FTC website, Mr. Hill responded that there is no guarantee that the exemptions used in the previous released version would be different.

34.      The records posted on the FTC website are heavily redacted. In response to a previous FOIA request, the agency made multiple assertions of the (b)(3) and (b)(4) exemptions.

35.      The records posted on the FTC website are directly responsive to the first three categories of EPIC's FOIA Request and affirms EPIC's position that the "unusual circumstances" extension was misapplied as to the first three category of records.

36.      The FTC also did not justify its blanket "unusual circumstances" claim and failed to specify a date on which a determination will be made. The FTC is required under the FOIA to provide not only written notice setting forth the reasons for "unusual circumstances" but must also indicate "the date on which a determination is expected to be dispatched." 5 U.S.C. § 552(a)(6)(B)(i). Likewise, this Court has held that an "unusual circumstances" provision "only allows an additional ten-working day extension, i.e., from twenty to thirty working days . . . **and requires the agency to indicate "the date on which a determination is expected to be dispatched."** *Gatore v. DHS*, 177 F. Supp. 3d 46, 54 (D.D.C. 2016) (emphasis added). As previously stated, the FTC failed to indicate an affirmative date on which a determination is expected to be dispatched.

---

[27] *See Frequently Requested Records: Facebook*, Fed. Trade Comm'n, https://www.ftc.gov/about-ftc/foia/frequently-requested-records/facebook.

37.     On April 19, 2018, Mr. Gold did not respond to EPIC or provide a date for processing. EPIC called Mr. Gold and left a voice message.

### EPIC's Constructive Exhaustion of Administrative Remedies

38.     Today is the 32nd day since the FTC received EPIC's FOIA Request.

39.     The FTC has failed to make a determination regarding EPIC's FOIA Request within the time period required by 5 U.S.C. § 552(a)(6)(A)(ii).

40.     EPIC has exhausted all administrative remedies under 5 U.S.C. § 552(a)(6)(C)(i).

### Count I

### Violation of FOIA: Failure to Comply with Statutory Deadlines

41.     Plaintiff asserts and incorporates by reference paragraphs 1–35.

42.     Defendant FTC has failed to make a determination regarding EPIC's FOIA request for 32 days (24-working days) and has thus violated the deadlines under 5 U.S.C. §§ 552(a)(6)(E)(ii)(I), (a)(6)(A)(ii).

43.     Plaintiff has constructively exhausted all applicable administrative remedies under 5 U.S.C. § 552(a)(6)(C)(i).

### Count II

### Violation of FOIA: Unlawful Withholding of Agency Records

44.     Plaintiff asserts and incorporates by reference paragraphs 1–35.

45.     Defendant FTC has wrongfully withheld agency records requested by Plaintiff.

46.     Plaintiff has exhausted all applicable administrative remedies under 5 U.S.C. § 552(a)(6)(C)(i).

47.     Plaintiff is entitled to injunctive relief with respect to the release and disclosure of the requested records.

## Requested Relief

WHEREFORE, Plaintiff requests that this Court:

A.  Order Defendant to immediately conduct a reasonable search for all responsive records;

B.  Order Defendant to take all reasonable steps to release nonexempt records;

C.  Order Defendant to disclose to Plaintiff all responsive, non-exempt records;

D.  Order Defendant to produce the records sought without the assessment of search fees;

E.  Award EPIC costs and reasonable attorney's fees incurred in this action; and

F.  Grant such other relief as the Court may deem just and proper.

Respectfully Submitted,

Marc Rotenberg, D.C. Bar # 422825
EPIC President and Executive Director


/s/ Alan Butler

Alan Butler, D.C. Bar # 1012128
EPIC Senior Counsel

ELECTRONIC PRIVACY
INFORMATION CENTER
1718 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20009
(202) 483-1140 (telephone)
(202) 483-1248 (facsimile)

Dated: April 20, 2018