IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER<br><br>  Plaintiff,<br><br>  v.<br><br>FEDERAL TRADE COMMISSION<br><br>  Defendant. | Civil Action No. 18-942 (TJK) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGEMENT ON ATTORNEY'S FEES AND COSTS**

This case stems from EPIC's Freedom of Information Act request ("EPIC's FOIA Request") to the Federal Trade Commission ("FTC") seeking records in the agency's possession about Facebook's biennial privacy assessments and two other categories of information about the company's failure to comply with the 2011 Consent Order. After the FTC failed to issue a determination on EPIC's FOIA Request by the statutory deadline, EPIC sued. Prior to the litigation, the FTC informed EPIC that it was reviewing the Facebook assessments because multiple requesters were seeking those records. At the time EPIC filed suit, public interest in Facebook's compliance with the 2011 Consent Order was at its zenith. The Cambridge Analytica scandal broke on March 17, 2018, when news outlets revealed that Facebook had allowed the private data of over 87 million users to be transferred to a data analytics firm without their knowledge or consent. Carole Cadwalladr & Emma Graham-Harrison, *Revealed: 50 Million Facebook Profiles Harvested for Cambridge Analytica in Major Data Breach*, The Guardian (Mar. 17,

1

2018);[1] Matthew Rosenberg, Nicholas Confessore, & Carole Cadwalladr, *How Trump Consultants Exploited the Facebook Data of Millions*, N.Y. Times (Mar. 17, 2018).[2] The agency did not begin searching for or processing records responsive to categories four and five in EPIC's FOIA Request prior to this lawsuit. The agency did not issue a determination or release any responsive records prior to this lawsuit. Then during the course of, and as a result of, this lawsuit the FTC agreed to process EPIC's FOIA Request and promptly produce responsive records. This agreement was memorialized in a joint status report that the Court adopted in a scheduling order. The Court ordered the parties to file a further report once the production was complete. The parties agree that the substantive issues in the action have been resolved. EPIC substantially prevailed in this case by obtaining favorable judicial orders and prompt production of responsive records. EPIC hereby moves for partial summary judgment on its claim for attorney's fees and costs under 5 U.S.C. § 552(a)(4)(E).

**FACTUAL BACKGROUND**

From 2009 to 2011, EPIC and other groups filed a series of complaints with the Federal Trade Commission concerning Facebook's unfair and deceptive privacy practices. This included a December 2009 Complaint filed by EPIC and a coalition of privacy and civil liberties organizations, supplemental material filed by EPIC in February 2010, and an additional Complaint filed by EPIC and a coalition of privacy and civil liberties organizations in May 2010. Complaint, Request for Investigation, Injunction,

---

[1] https://www.theguardian.com/news/2018/mar/17/cambridge-analytica-facebook-influence-us-election.
[2] https://www.nytimes.com/2018/03/17/us/politics/cambridge-analytica-trump-campaign.html.

and Other Relief of EPIC et al., *In re Facebook, Inc.* (Dec. 17, 2009);[3] Supplemental Materials Submitted by EPIC et al. in Support of Pending Complaint and Request for Injunction, Request for Investigation and for Other Relief, *In re Facebook, Inc.* (Jan. 14, 2010);[4] Complaint, Request for Investigation, Injunction, and Other Relief, *In re Facebook, Inc.* (May 5, 2010).[5] In response to EPIC's complaints and the ensuing investigation, the FTC brought a complaint against Facebook and alleged that the company violated Section 5 of the FTC Act. Press Release, Fed. Trade Comm'n, Facebook Settles FTC Charges that It Deceived Consumers by Failing to Keep Privacy Promises (Nov. 29, 2011).[6] The FTC and Facebook entered into a proposed Consent Order in 2011, which was finalized in 2012. *Id.* Under the 2011 Consent Order, Facebook was

- barred from making misrepresentations about the privacy or security of consumers' personal information;
- required to obtain consumers' affirmative express consent before enacting changes that override their privacy preferences;
- required to prevent anyone from accessing a user's material more than 30 days after the user has deleted his or her account;
- required to establish and maintain a comprehensive privacy program designed to address privacy risks associated with the development and management of new

---

[3] https://epic.org/privacy/inrefacebook/EPIC-FacebookComplaint.pdf.
[4] https://epic.org/privacy/inrefacebook/EPIC_Facebook_Supp.pdf.
[5] https://epic.org/privacy/facebook/EPIC_FTC_FB_Complaint.pdf.
[6] https://www.ftc.gov/news-events/pressreleases/2011/11/facebook-settles-ftc-charges-it-deceived-consumers-failing-keep.

- and existing products and services, and to protect the privacy and confidentiality of consumers' information; and

- required, within 180 days, and every two years after that for the next 20 years, to obtain independent, third-party audits certifying that it has a privacy program in place that meets or exceeds the requirements of the FTC order, and to ensure that the privacy of consumers' information is protected.

*Id*. The Chairman of the Federal Trade Commission at the time, John Liebowitz, stated "Facebook is obligated to keep the promises about privacy that it makes to its hundreds of millions of users. Facebook's innovation does not have to come at the expense of consumer privacy. The FTC action will ensure it will not." *Id.*

On March 16, 2018, Facebook acknowledged that Dr. Aleksandr Kogan, in coordination with Cambridge Analytica and SLC Group, exfiltrated personal information of "[a]pproximately 270,000" Facebook users, and information about those users' friends. Press Release, Facebook, Suspending Cambridge Analytica and SCL Group from Facebook (Mar. 16, 2018).[7] The next day, the *Guardian* and the *New York Times* reported that Facebook had allowed these entities to harvest personal data from more than 50 million Facebook users, and that the companies used this data to influence the 2016 U.S. presidential election and the vote on Brexit. Cadwalladr et al., *supra*; Rosenberg et al., *supra*. Facebook's failure to prevent this breach was a clear violation of the 2011 Consent Order. Yet the FTC did not bring any enforcement actions against Facebook for violating the 2011 Consent Order prior to 2019.

---

[7] https://newsroom.fb.com/news/2018/03/suspending-cambridge-analytica/.

In the wake of the Cambridge Analytica scandal, Congress held a joint hearing about Facebook's failure to protect the personal data of users, calling Facebook's CEO Mark Zuckerberg to publicly testify about the company's privacy practices. *Facebook, Social Media Privacy, and the Use and Abuse of Data: Hearing Before the S. Comm. on the Judiciary*, 115th Cong. (2018).[8] On March 26, 2018, the FTC confirmed there was an investigation into Facebook over its privacy practices. Press Release, Fed. Trade Comm., Statement by the Acting Director of FTC's Bureau of Consumer Protection Regarding Reported Concerns about Facebook Privacy Practices (Mar. 26, 2018).[9]

Immediately after the Cambridge Analytica scandal broke, EPIC filed a FOIA request with the FTC seeking release of the biennial privacy assessments and related records about Facebook's dealings with the FTC under the 2011 Consent Order. Compl. ¶ 25. Specifically, EPIC sought five categories of records:

(1) The 2013 Facebook Assessments;
(2) The 2015 Facebook Assessments;
(3) The 2017 Facebook Assessments;
(4) All records concerning the person(s) approved by the FTC to undertake the Facebook Assessments; and
(5) All records and communications between the FTC and Facebook regarding the Facebook Assessments.

Compl. ¶ 26. EPIC also sought "news media" fee status and a fee waiver and expedited processing. Compl. ¶ 27. On March 29, 2018, the FTC granted EPIC's request for expedited processing and a fee waiver. Compl. ¶ 29.

In an April 17, 2018 email, the FTC informed EPIC that it could not respond to EPIC's FOIA Request within the statutory 20-working day deadline and invoked an

---

[8] https://www.judiciary.senate.gov/meetings/facebook-social-mediaprivacy-and-the-use-and-abuse-of-data.
[9] https://www.ftc.gov/news-events/press-releases/2018/03/statement-acting-director-ftcs-bureau-consumerprotection.

5

extension under "unusual circumstances." Compl. ¶ 30. Specifically, the FTC stated that there was a need to search for records "from field facilities or other establishments" separate from the office processing EPIC's FOIA Request and a "need for consultation . . . with another agency or two or more agencies" that have a substantial interest in the request. Compl. ¶ 30. On the following day, the FTC informed EPIC that records responsive to the first three categories of request records were already posted on the FTC website and that the agency would re-review and reprocess the assessments given the increased interest in the records. Compl. ¶ 33. The FTC indicate that it had begun searching for or processing records responsive to the other categories of EPIC's request.

On April 20, 2018, EPIC filed suit. EPIC alleged in its Complaint that the FTC was unlawfully withholding agency records and that the agency had failed to comply with the statutory deadlines. Compl. ¶¶ 41–47. EPIC sought injunctive relief including an order for the agency to "immediately conduct a reasonable search for all responsive records," to "take all reasonable steps to release nonexempt records," to "disclose to [EPIC] all responsive, non-exempt records," to "produce the records sought without the assessment of search fees," and to "[a]ward EPIC costs and reasonable attorney's fees incurred in this action." Compl. 12.

Prior to the lawsuit, the agency had made no release of responsive records and issued no determination as required under the FOIA. On May 24, 2018, the FTC filed its Answer and argued that EPIC had "failed to exhaust its administrative remedies" and that EPIC's claims that the agency failed to process the EPIC FOIA Request were "moot." Answer 7. At that time, the FTC had not produced any records to EPIC, had not issued a

determination on EPIC's FOIA Request, and had not conducted a search for responsive records.

The Court then ordered the parties to "meet, confer, and file a joint proposed schedule for briefing or disclosure by June 26, 2018." The agency sent EPIC a draft status report one day before the Court's deadline and did not propose a schedule for disclosure of responsive records. Instead, the status report indicated that the FTC would publish records responsive to the first three categories of EPIC's FOIA Request (the Facebook privacy assessments) on June 26, 2018. Joint Status Report, ECF No. 7. The agency stated that it had "requested additional time to establish a schedule for processing of the request and disclosure of relevant records" responsive to the other categories of EPIC's FOIA Request. *Id*. As of June 26, 2018, more than two months *after* EPIC filed suit, the FTC had not completed its search, begun processing, or issued a determination with respect to categories 4 and 5 of EPIC's request.

The parties agreed that the FTC would have one month to "establish a schedule for processing of the request." The Court reviewed the June 26, 2018, Joint Status Report and ordered the parties to file another joint status report on July 26, 2018. June 28, 2018, Minute Order. EPIC then contacted opposing counsel on July 25, 2018, to propose a processing schedule. EPIC stated in its e-mail that "We propose the following production schedule: The FTC shall process and release all non-exempt records responsive to EPIC's FOIA request by Monday, August 27, 2018. We also propose that the parties file another status report 14 days after production (September 10, 2018), allowing EPIC and the agency to confer on whether there are any remaining issues in dispute." Opposing counsel responded the next day with a counterproposal for an "interim production on

7

9/10/18 and a final production on 10/10/18." EPIC agreed to that modified production schedule and the parties incorporated that into the July 26, 2018, Joint Status Report. ECF No. 8. The parties also outlined the production schedule explicitly in the proposed order submitted with the status report. ECF No. 8-1. The Court reviewed the status report and issued a Minute Order on July 30, 2018, adopting the schedule and ordering the parties to "file another joint status report by October 20, 2018."

Pursuant to the production schedule proposed by EPIC in this case, agreed to by the FTC in the July 26, 2018 Joint Status Report, and approved by the Court in the July 20, 2018 Minute Order, the FTC released records responsive categories 1–4 of EPIC's FOIA Request on September 10, 2018. Ex 1. As part of its first scheduled release the FTC produced copies of the Facebook privacy assessments, despite re-processing and publishing all three assessments on its website on June 26, 2018. The agency also released records responsive to category 4 of EPIC's FOIA Request. The FTC released these records after it had "engaged in discussions with Facebook and PriceWaterhouseCoopers, the auditor that prepared the Facebook Assessments" regarding potential confidentiality claims. Joint Status Report, ECF No. 8.

The FTC provided to EPIC a second interim production of documents responsive to category 5 on October 12, 2018. Ex. 2. Counsel for the FTC subsequently spoke to EPIC on October 18, 2018, and informed EPIC that there was a second set of records responsive to category 5 and that they were preparing to complete the final production of responsive records to EPIC. Counsel for the FTC also informed EPIC for the first time that Facebook opposed the release of some of the records and was considering filing an intervention in the case. Facebook did not file a motion to intervene at that time, and the

8

FTC completed its third and final production of documents responsive to category 5 on October 19, 2018. Ex. 3.

EPIC reviewed the released material and requested the agency provide additional information regarding the withholdings in approximately 50 pages of the responsive records. Joint Status Report, ECF No. 10. On February 22, 2019, the FTC provided an index in response to EPIC's inquiry that described the agency's basis for withholding information. Joint Status Report, ECF No. 13. After reviewing the FTC's index and exemption analysis, EPIC informed the agency that it believed many of the records were not properly withheld under Exemption 4 and that it intended to challenge the withholdings. Joint Status Report, ECF No. 13. The FTC agreed to re-review the material, but subsequently informed EPIC that Facebook and PriceWaterhouseCoopers ("PwC") would not authorize the release of any withheld material. Joint Status Report, ECF No. 14. EPIC responded to the agency and indicated that it intends to challenge the FTC's Exemption 4 and Exemption 3 (Section 6(f) of the FTC Act) withholdings. *Id*.

On April 9, 2019, Facebook informed the parties that it planned to intervene. Joint Status Report, ECF No. 14. On August 28, 2019, the Court granted Facebook's motion to intervene.

While Facebook's motion to intervene was pending, the Supreme Court issued a decision in *Food Marketing Institute v. Argus Leader Media*, 139 S. Ct. 2356 (2019), abrogating the Exemption 4 standard set out by the D.C. Circuit in *National Parks and Conservation Ass'n v. Morton*, 498 F.2d 765 (D.C. Cir. 1974). The *National Parks* standard was the basis for EPIC's challenge to the FTC's withholdings in this

case. As such, the parties agreed to resolve the merits of EPIC's FOIA claims through settlement. Joint Status Report, ECF No. 26.

The parties agreed that the only remaining issue in dispute was attorney's fees and costs, and proposed a briefing schedule on the fee claim. Joint Status Report, ECF No. 27.

EPIC has incurred substantial costs in this litigation and is both eligible and entitled to recover attorney's fees and costs.

## ARGUMENT

EPIC is eligible for and entitled to recover attorney's fees and costs for work to obtain documents in this case. Under the FOIA, "[t]he court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). The attorney fee inquiry is divided into two prongs: eligibility and entitlement. *Nat'l Sec. Counselors v. CIA*, 811 F.3d 22, 28 (D.C. Cir. 2016). Because EPIC is both eligible for and entitled to fees, the Court should grant EPIC's motion.

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact is one that would change the outcome of the litigation." *EPIC v. DHS*, 999 F. Supp. 2d 24, 28 (D.D.C. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). FOIA cases are typically decided on motions for summary judgment. *Id.*; *see Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009).

I.  **EPIC is eligible for and entitled to recover fees and costs.**

   A.  **EPIC is eligible to recover fees and costs under the FOIA.**

A FOIA plaintiff who has "substantially prevailed" is eligible to recover fees and costs. *McKinley v. Fed. Hous. Fin. Agency*, 739 F.3d 707, 710 (D.C. Cir. 2014). A plaintiff "substantially prevails" under the FOIA by obtaining "relief through either (I) a judicial order, or an enforceable written agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii). Here, EPIC substantially prevailed in both regards: EPIC obtained a favorable judicial order, and EPIC's suit caused a voluntary change in the FTC's position regarding the production of responsive records.

First, EPIC substantially prevailed by obtaining a court order that obligated the FTC to produce records by a date certain. Min. Order (July 30, 2018). A FOIA plaintiff substantially prevails when "awarded some relief on the merits of [its] claim" in the form of a judicial order that "change[s] the legal relationship between the plaintiff and defendant." *Judicial Watch, Inc. v. FBI*, 522 F.3d 364, 367–68 (D.C. Cir. 2008) (citing *Davy v. CIA*, 456 F.3d 162, 165–66 (D.C. Cir. 2006) (internal quotation marks omitted)). An order that requires an agency to produce documents by a date certain changes the legal relationship between the parties because the order changes the legal relationship between the parties. Prior to the order the agency "[is] not under any judicial direction to produce documents by specific dates," and after the order the agency must process and produce responsive records as indicated or be subject to the sanction of contempt. *EPIC v. DHS*, 218 F. Supp. 3d 27, 39 (D.D.C. 2016) (citing *Judicial Watch*, 456 F.3d at 368) (holding that EPIC substantially prevailed when the court ordered the government to produce responsive records by a date certain); *EPIC v. FBI*, 80 F. Supp. 3d 149, 156

11

(D.D.C. 2015); *EPIC v. FBI*, 72 F. Supp. 3d 338, 344 (D.D.C. 2014) (same). The D.C. Circuit has found that a court's adoption of the parties' agreed-upon production schedule or an existing production schedule constitutes a judicial award of relief on the merits. *See e.g.*, *Judicial Watch, Inc. v. DOJ*, 774 F. Supp. 2d 225, 229 (D.D.C. 2011) (finding that plaintiff substantially prevailed when the Court adopted the parties' joint stipulation); *Am. Oversight v. DOJ*, 375 F. Supp. 3d 50, 62 (D.D.C. 2019) (stating "Plaintiff could still satisfy the judicial-order requirement by showing that the Court issued an order adopting an existing production schedule.").

Prior to the June 30 Order, the FTC was under no judicial mandate to produce responsive records; the agency had not indicated whether it had begun a search for responsive records; and the agency had not established a schedule for processing the records. *See* Min. Order (June 30, 2018); Joint Status Report, ECF No. 7 (stating that the FTC requires additional time "to establish a schedule for processing of the request"). Only after EPIC initiated this suit and the Court ordered the FTC to establish a production schedule, and then approved that production schedule, did the FTC produce records responsive to all the categories of EPIC's FOIA Request.

EPIC and the FTC conferred and agreed to a production schedule two months *after* EPIC filed suit. Under the production schedule in this case, the first release was made by September 10, 2018, and the final release was to be made by October 10, 2018. Joint Status Report, ECF No. 8. In the Joint Status Report, the parties requested that they be permitted to file a further status report to "advise the Court of the parties' progress." Joint Status Report, ECF No. 8. When the Court entered its July 30, 2018, Minute Order, the Court accepted the parties' agreed-upon production schedule and established that the

12

FTC would produce documents by the dates specified in the July 26, 2018 Joint Status Report. The July 30 Minute Order changed the legal relationship between EPIC and the FTC. Because the agency released the records in compliance with a judicial order, EPIC substantially prevailed.

EPIC also substantially prevailed by obtaining a "voluntary or unilateral change in position by the agency." *See Judicial Watch, Inc. v. DOJ*, 878 F. Supp. 2d 225, 233 (D.D.C. 2012). Fees are justified under this "catalyst theory"—a voluntary change in an agency's position—when "litigation substantially caused the requested records to be released." *Am. Oversight v. DOJ*, 375 F. Supp. 3d 50, 61 (D.D.C. 2019) (quotations omitted). Courts have found that a party substantially prevailed under a catalyst theory when an agency accelerated the search for responsive records after filing suit. *See Nat'l Sec. Counselors v. Cent. Intelligence Agency*, 189 F. Supp. 3d 73, 80 (D.D.C. 2016) (finding that timing of release of records after suing provided evidence of causation necessary under the catalyst theory for plaintiff to substantially prevail). For example, in *EPIC v. DHS*, the agency had taken initial steps to process EPIC's FOIA request prior to litigation; the agency had "tasked out the search" and discussed ways to proceed with processing EPIC's request but had not yet conducted an electronic or physical search. 218 F. Supp. 3d 27, 42 (D.D.C. 2016). The court found that EPIC substantially prevailed under the catalyst theory because the agency "accelerated" its search for responsive records after EPIC filed suit. *Id*. Similarly in *EPIC v. DHS*, the court found that EPIC was eligible for attorney's fees because it was not until EPIC filed suit that the DHS released hundreds of pages of responsive records. 811 F. Supp. 2d 216, 233 (D.D.C. 2011). Prior

to the commencement of the litigation, the agency had not conduct searches or justified their delay. *Id*.

When EPIC submitted the FOIA request on March 20, 2018, the records that EPIC eventually obtained were not available to the public. It was not until after EPIC sued that the agency released records of communications between the FTC and Facebook regarding compliance with the 2011 Consent Order (categories 4 and 5 of EPIC's FOIA Request). Prior to EPIC's suit, the agency had not processed any category of EPIC's FOIA Request or produced responsive records. Even when the FTC claimed that it was facing "unusual circumstances," the agency did not provide a date certain for a determination or state that it needed to consult with Facebook or PwC regarding the release of possible confidential information. The FTC never indicated that it had begun an electronic or physical search for responsive records. After EPIC sued, the FTC requested additional time to establish a schedule for identifying and processing records responsive to categories 4 and 5. Joint Status Report, ECF No. 7. It was not until a month after the initial joint status report that the FTC stated it "believe[d] that it ha[d] located responsive records." Joint Status Report, ECF No. 8.

Additionally, EPIC's suit was necessary to cause the release of agency records that may not otherwise have been released due to Facebook's opposition. According to the FTC, "[s]ince even before EPIC made its request, [the agency has] engaged in regular discussions with Facebook and [PwC] regarding the scope and applicability of the laws governing confidentiality of materials obtained by the Agency." Joint Status Report, ECF No. 7. Specifically, the FTC stated that "as a result of those discussions," the agency released partially unredacted versions of the Facebook biennial assessments online. *Id.*

14

But the agency gave no indication prior to EPIC's lawsuit that these discussions with Facebook and PwC pertained to the last category of records about communications between Facebook and the FTC about the assessments. During the course of litigation, Facebook objected to the release of additional information and even threatened to intervene to prevent the release of information. *See* Joint Status Report, ECF No. 14. In conversations between EPIC and the FTC, the agency expressed that it wanted to avoid having Facebook "involved" in EPIC's case. Had EPIC not filed suit, Facebook might have succeeded in its efforts to stop the release of responsive records from being released.

Because EPIC's lawsuit was the catalyst that drove the agency to release responsive records, EPIC "substantially prevailed." *See e.g., Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 525 (D.C. Cir. 2011) ("[P]laintiffs can now qualify as 'substantially prevailing,' and thus become eligible for attorney fees, without winning court-ordered relief on the merits of their FOIA claims.").

Under both eligibility standards set forth by the FOIA and for the above reasons, EPIC has substantially prevailed and is eligible to recover fees.

### B. EPIC is entitled to recover fees and costs under the D.C. Circuit's four-factor test.

If a FOIA plaintiff is eligible to recover fees and costs, the court must then determine whether the plaintiff is also entitled to recover those fees and costs. *Brayton*, 641 F.3d at 525. Courts in this Circuit employ a four-factor test to determine a plaintiff's fee entitlement. *Morley v. CIA*, 810 F.3d 841, 842 (D.C. Cir. 2016). The four factors are: (1) "the benefit to the public, if any, deriving from the case"; (2) "the commercial benefit to the plaintiff"; (3) "the nature of the plaintiff's interest in the records"; and (4) "the

15

reasonableness of the agency's withholding." *Id.* Because all four factors favor EPIC, the Court should grant EPIC's motion for fees and costs.

The first factor concerns the public benefit derived from the case. *Morley*, 810 F.3d at 844. In *Morley*, the D.C. Circuit explained that the public-benefit analysis "requires an *ex ante* assessment of the potential public value of the information requested, with little or no regard to whether any documents supplied prove to advance the public interest." *Id*. "[I]f it's plausible *ex ante* that a request has a decent chance of yielding a public benefit, the public-benefit analysis ends there." *Id.* The potential public value of the records at issue in EPIC's FOIA Request clearly tips the factor in EPIC's favor.

As explained in EPIC's FOIA Request, there is a strong public interest in making records about communications between the FTC and Facebook available because "the public has been left in the dark about whether the FTC has been appropriately enforcing [the 2011 Consent Order] and investigating any potential violations by Facebook." EPIC's FOIA Request, Ex. 4. Through EPIC's FOIA Request, EPIC sought to vindicate the public's interest in understanding how Facebook has been "complying with the original order and whether the FTC has been fulfilling its function in safeguarding online privacy." *Id.* Despite the explicit requirements under the consent order, Facebook has repeatedly violated the privacy of its users. Even when there has been mounting public evidence of privacy violations admitted by Facebook and reported by news media over the years, such as Facebook admitting it learned about Cambridge Analytica's data harvesting in 2015, the FTC did not charge Facebook with violating the consent order.

After the agency failed to act in the wake of the Cambridge Analytica scandal, EPIC submitted the FOIA request seeking the release of all the Facebook assessments

and records related to Facebook's privacy practices. There was, and still is, an urgent and ongoing public concern about Facebook's privacy practices and the effectiveness of the FTC's enforcement authority. EPIC acted in the public's interest to obtain as much information as possible leading up to the Cambridge Analytica scandal to assess how Facebook knew a data analytics firm illicitly harvested the personal data of over 87 million Facebook users from 2014 to 2016 but was never fined for violating the consent order. Under *Morley*, EPIC's FOIA Request had more than "a modest probability of generating useful new information about a matter of public concern"—indeed, EPIC ultimately uncovered previously secret communications between the agency and Facebook about non-enforcement of the consent order and actions that may violate the order—the public-benefit factor clearly favors EPIC. 810 F.3d at 844.

The records ultimately obtained by EPIC—communications between the FTC and Facebook following the 2011 Consent Order and documents related to selection of PwC as a third-party auditor—further establish that the public-benefit factor favors EPIC. The public-benefit factor favors a FOIA plaintiff where the records obtained are "likely to add to the fund of information that citizens may use in making vital political choices." *Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C. Cir. 1995). The records released allow the public to evaluate how the Cambridge Analytica breach occurred and to evaluate the shortcomings of the FTC's enforcement of the 2011 Consent Order. For example, the documents reveal the FTC's failure to act on evidence that Facebook violated the consent order. Even when the FTC saw evidence of possible violations, the agency failed to take decisive action and use its legal authority to regulate Facebook. The released information shows that the FTC often took Facebook's word at face value without additional follow-up inquiry. None of

the documents released indicate that Facebook notified the FTC when it first discovered that Cambridge Analytica harvested the data of millions of Facebook users without their consent. By obtaining a previously secret communications between the FTC and Facebook during the consent order, EPIC's successful lawsuit added to the public's fund of information.

The second and third entitlement factors also favor EPIC. The "nature of the [requester's] interest" factor is "closely related [to] and often considered together with the commercial benefit criterion." *Tax Analysts v. DOJ*, 965 F.2d 1092, 1095 (D.C. Cir. 1992). "The second factor considers the commercial benefit to the plaintiff, while the third factor considers the plaintiff's interest in the records." *EPIC v. DHS*, 999 F. Supp. 2d 61, 69 (D.D.C. 2013). Favored interests are "scholarly, journalistic or public-interest oriented." *See Long v. IRS*, 932 F.2d 1309, 1316 (9th Cir. 1991) (holding that a lower court's ruling that the plaintiff's scholarly interest weighed against her recovery of fees was "wrong as a matter of law and an abuse of discretion").

EPIC sought the documents in the public interest as a "quintessential requestor of government information envisioned by the FOIA." *EPIC v. DHS*, 982 F. Supp. 2d 56, 63 (D.D.C. 2013). EPIC is a 501(c)(3) non-profit public interest research organization. *EPIC v. DOD*, 241 F. Supp. 2d 5, 5 (D.D.C. 2003). EPIC derived no commercial benefit from the FOIA request or lawsuit. The sole benefit was to the public, which benefited from the disclosure of the documents released. Thus, EPIC's interest in this matter is squarely within the "scholarly, journalistic or public interest oriented" interests favored by the statute. *See EPIC v. DHS,* 811 F. Supp. 2d 216, 235 (D.D.C. 2011) (finding that "[EPIC's] aims, which include dissemination of information regarding privacy issues to

the public . . . fall within the scholarly and public-interest oriented goals promoted by FOIA").

Lastly, the fourth entitlement factor favors EPIC because the FTC did not have a "reasonable legal basis" to withhold responsive documents. If the government's justification for withholding was "correct as a matter of law," then this factor is dispositive. *Davy v. CIA*, 550 F. 3d 1155, 1162 (D.C. Cir. 2008) ("*Davy II*"). If, however, the agency's justification only has "a colorable basis in law," then the factor is weighed against the other factors. *Id.* Failure to respond meaningfully to a FOIA request prior to initiating a lawsuit, for instance, is evidence that the agency lacks a colorable basis in law to withhold responsive documents. *Id.* at 1163. The agency "carries the burden of showing it behaved reasonably." *EPIC v. DHS*, 218 F. Supp. 3d 27, 45 (D.D.C. 2016) (citing *Davy II*, 550 F. 3d at 1163). The FTC loses under either standard. At no point has the agency offered any adequate justification for failing to respond to EPIC's FOIA Request by the 20-day statutory deadline or failing to produce responsive records promptly. *See* Answer, ECF No. 6. Because the FTC failed to justify its deficient response to EPIC's FOIA Request, the fourth factor favors EPIC.

Because all four factors favor EPIC, EPIC is entitled to reasonable attorney's fees.

## II.     The Court Should Award "Fees-on-Fees"

EPIC is also entitled to recover for its work to seek attorney's fees in this matter. "It is settled in this circuit that hours reasonably devoted to a request for fees are compensable." *Judicial Watch, Inc. v. DOJ*, 878 F. Supp. 2d at 240 (citations omitted); *see also EPIC v. DHS,* 811 F. Supp. 2d at 237 ("It is a common practice in this jurisdiction to award fees on fees in FOIA cases."). EPIC will also incur fee-on-fees for work preparing the reply brief in support of this motion. The Court should accordingly

19

grant EPIC's motion and award fees-on-fees.

## CONCLUSION

EPIC has substantially prevailed in this case and is eligible for and entitled to recover attorney's fees and costs under the FOIA. For the above reasons, this Court should grant EPIC's Motion for Partial Summary Judgment and direct the parties to begin negotiating a reasonable fee award for EPIC.

      Respectfully submitted,

      MARC ROTENBERG (DC Bar # 422825)
      EPIC Executive Director

      */s/ Alan Jay Butler*
      ALAN JAY BUTLER (DC Bar #1012128)
      EPIC Senior Counsel

      Enid Zhou (DC Bar # 1632392)
      EPIC Open Government Counsel

      Electronic Privacy Information Center
      1519 New Hampshire Ave NW
      Washington, DC 20036
      202-483-1140
      butler@epic.org
      *Counsel for Plaintiff*

Dated: November 22, 2019