UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER, | ) ) ) ) |
| Plaintiff, | ) ) ) Civil Action No. 18-0942 (TJK) |
| v. | ) ) |
| FEDERAL TRADE COMMISSION, | ) ) |
| Defendant. | ) ) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT ON ATTORNEY'S FEES AND COSTS**

Plaintiff Electronic Privacy Information Center ("EPIC") brought a claim under the Freedom of Information Act ("FOIA") against the Federal Trade Commission ("FTC"), alleging that the FTC failed to make a determination or produce requested documents within the time period mandated by FOIA. ECF No. 1.  Prior to EPIC filing its Complaint, the FTC had begun processing and responding to the request and had invoked statutory extension mechanisms. EPIC short-circuited the administrative process, however, filing this lawsuit before the statutory period for the FTC to respond had run.  As a normal part of its FOIA processing, the FTC continued its efforts to respond to EPIC's request after EPIC filed its Complaint on April 20, 2018; the FTC produced responsive records on a rolling basis and completed its production by October 2018.

EPIC now seeks attorney's fees to obtain records that the agency was already processing when EPIC filed its lawsuit.  As discussed below, EPIC has not demonstrated that it is either eligible or entitled to fees.  The Court should therefore deny Plaintiff's Motion for Partial

Summary Judgment on Attorney's Fees and Costs ("EPIC Motion") (ECF No. 28).

## FACTUAL BACKGROUND

On March 20, 2018, EPIC submitted a FOIA request to the FTC seeking five categories of records:

- Assessments of Facebook's privacy practices submitted to the FTC in 2013, 2015, and 2017 (categories 1-3);
- Records related to the auditor approved by the FTC to undertake those Assessments (category 4); and
- Communications between the FTC and Facebook regarding the Assessments (category 5).

Stearns Decl. ¶ 6; Exhibit A. From the day EPIC submitted its FOIA request and throughout the search and production process, the FTC was diligent, transparent, and responsive.

<u>Search for and Processing of the Records Prior to Filing of EPIC's Complaint</u>

On March 29, 2018, the FTC acknowledged receipt of EPIC's FOIA request and assigned it to the FTC's expedited complex processing track. Stearns Decl. ¶¶ 11-12; Exhibit B. As of that date, the FTC had received numerous similar FOIA requests, Stearns Decl. ¶ 9, and had already commenced the search for these records. On March 28, 2018, the assigned attorney in the FTC's FOIA office sent a request for documents to the Enforcement Division of the FTC's Bureau of Consumer Protection, the division responsible for monitoring Facebook's compliance with the FTC's 2011 consent order. *Id*. ¶ 10. The FOIA attorney sent a document request to additional Enforcement Division employees on April 4, 2018, specifying that the request encompassed all the categories of records sought by EPIC. *Id*. ¶ 13. On April 5, 2018, an attorney in the Enforcement Division provided the Facebook Assessments to the FOIA office, stated that she would search next for the other categories of requested documents, and identified employees in the FTC's Division of Privacy and Identity Protection ("DPIP") who might have responsive records. *Id*. ¶ 13. That same day, the FOIA attorney contacted DPIP staff and asked

them to search for the requested records, drawing their attention in particular to the pending requests for all communications between the FTC and Facebook or its third-party assessors. *Id.* ¶ 14. While the search for responsive records continued, *id.* ¶¶ 15-16, on April 16, 2018, the FTC publicly posted on its website (under "Frequently Requested Records") the three Facebook Assessments as released with substantial redactions in response to prior FOIA requests. *Id.* ¶ 17.

On April 17, 2018, the FTC informed EPIC that the agency was unable to respond to EPIC's request within FOIA's usual 20-working day deadline and invoked the additional 10-working day extension provided by FOIA for "unusual circumstances." *Id.* ¶ 18; Exhibit C. Specifically, the FOIA office "need[ed] to search for and collect the requested records" from offices that are "separate from the office processing the request" and to "consult[] … with … two or more components of the agency having a substantial interest in the determination of the request…." 5 U.S.C. § 552(a)(6)(B)(iii). Furthermore, the FTC also was required under its organic statute and governing regulations to provide notification to Facebook in advance of any disclosure, because the requested records contained confidential commercial information submitted by Facebook through PricewaterhouseCoopers ("PwC"), the auditor that prepared the Assessments. Stearns Decl. ¶ 22; *see* 15 U.S.C. §§ 46(f) and 57b-2(c)(2); 16 C.F.R. 4.10(e) and (g). On April 17, 2018, the FTC FOIA office provided this pre-disclosure notification to allow Facebook to identify information that it viewed as confidential and to substantiate the basis for nondisclosure of that information. *Id.* ¶ 23.

On April 18, 2018, EPIC separately called the FTC's FOIA Public Liaison and the assigned FOIA attorney and asked that the FTC bifurcate its FOIA request by prioritizing the first three categories of records it requested—the 2013, 2015, and 2017 Facebook Assessments. Stearns Decl. ¶ 21; Exhibit D. EPIC expressed its belief that the "unusual circumstances" that

warranted a 10-working day extension did not apply to the Facebook Assessments. The assigned FOIA attorney told EPIC that the three Facebook Assessments, as released from prior FOIA requests, had been posted on the FTC's website and that the FTC was re-reviewing and reprocessing those records in light of the recent FOIA requests to determine if previously redacted information could now be disclosed. Stearns Decl. ¶ 21. Two days later, on April 20, 2018, EPIC filed this suit, alleging that the FTC failed to make a timely determination regarding its request and wrongfully withheld records. Compl. ¶¶ 41-47.

Continued Search for, Processing, and Final Production of Records

The FTC continued its orderly search for and processing of EPIC's and the multiple other pending FOIA requests for records related to the Facebook Assessments. On April 23, 2018, the FTC's FOIA unit received additional responses and documents from employees in the Enforcement Division and DPIP. Stearns Decl. ¶ 24. On May 2 and May 3, 2018, upon learning of other potential locations of responsive records, the FOIA unit sent a request for documents to a Commissioner's office, the Director of the Bureau of Consumer Protection, and the Bureau's front office. *Id.* ¶ 25. Throughout the month of May, the FOIA unit continued to receive responses and records from various FTC offices. *Id.* At the same time, the FOIA unit engaged in discussions with Facebook and PwC regarding the confidential commercial information submitted by them in the Facebook Assessment and related records to identify what portion of those records warranted protected from disclosure under FOIA and other applicable laws, and what portion could be released. Facebook provided comments on the FTC's proposed redactions to the Facebook Assessments up until the middle of June, and the FTC was then able to make its final determinations as to those records. *Id.* ¶ 26.

On June 26, 2018, the FTC released newly-processed records responsive to categories 1-3

of EPIC's request, and posted these documents on its website. *Id*. ¶ 27.  The parties informed the Court of this partial release of responsive records in a June 26, 2018 Joint Status Report. ECF No. 7.  The FTC continued its consultations with Facebook and PwC concerning confidential commercial information in records responsive to categories 4 and 5 of EPIC's request.  Stearns Decl. ¶ 28.  The parties' July 26, 2018 Joint Status Report noted that those entities might elect to join this action or initiate another action to limit or quash production of unredacted documents. ECF No. 8 at 2. On September 10, 2018, the FTC produced to EPIC a comprehensive set of records responsive to categories 1-4 of its request: the Facebook Assessment records previously released on June 26, 2018, and an additional 152 pages of records responsive to category 4. Stearns Decl. ¶ 29; EPIC Motion, Ex. 1.  The FTC produced records responsive to category 5 of EPIC's request on October 10, 2018, and, after locating additional records, made its final release to EPIC on October 19, 2018.  Stearns Decl. ¶30-31; EPIC Motion, Exs. 2 and 3. The records released in these productions contained redactions requested or made by Facebook and PwC.

After EPIC reviewed the production, it posed a series of questions to the FTC regarding approximately 50 pages of withheld material. ECF No. 10 at 1.  On February 22, 2019, the FTC provided EPIC with a *Vaughn index*, explaining the basis for the agency's withholding determinations. ECF No. 13 at 1.  When EPIC indicated that it intended to challenge the FTC's redactions made to protect Facebook's confidential business information, the FTC agreed to engage in further discussions with Facebook and PwC in an effort to further narrow the scope of the issues.  But neither Facebook nor PwC authorized the release of any withheld material. ECF. No. 14 at 1. On May 3, 2019, Facebook filed a motion to intervene.  On August 28, 2019, the Court granted the motion, over EPIC's opposition. ECF No. 21.  EPIC ultimately decided not to challenge any of the FTC's withholdings. ECF No. 25 at 1.

**ARGUMENT**

Courts "may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred" in FOIA cases in which "the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i).  A FOIA plaintiff may not, however, recover fees and costs unless the plaintiff is both eligible for and entitled to the award. *See Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 524 (D.C. Cir. 2011).

### A. EPIC Is Not Eligible For Attorney's Fees

To determine eligibility for an award of attorney's fees, the court "asks whether a plaintiff has substantially prevailed and thus may receive fees." *Id*. A FOIA plaintiff may "substantially prevail" if the plaintiff obtains relief through (1) a judicial order, or an enforceable written agreement or consent decree; or (2) "a voluntary or unilateral change in position by the agency, if the [plaintiff's] claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii).  The second provision codifies the "so-called 'catalyst theory' for determining a fee request against the United States, under which a plaintiff is deemed to have 'substantially prevailed' for purposes of § 552(a)(4)(E) if the 'litigation substantially caused the requested records to be released.'" *Gerhard v. U.S. Fed. Bureau of Prisons*, 258 F. Supp. 3d 159, 165 (D.D.C. 2017) (internal citations and quotation marks omitted).  EPIC is not eligible for attorney's fees under either provision.

#### 1. EPIC has not obtained relief through a judicial order

EPIC is not eligible for an award of attorney fees because the Court's orders in this case did not "change[] the legal relationship between [the plaintiff] and the defendant" or provide EPIC with any judicial "relief on the merits." *Judicial Watch, Inc. v. FBI*, 522 F.3d 364, 367 (D.C. Cir. 2008) (citation and internal quotation marks omitted).  The Court merely entered a

series of orders directing the parties to file a joint status report on a particular date.  The only other order entered was the grant of Facebook's motion to intervene, an issue that EPIC lost.

EPIC wrongly claims (*see* Memorandum of Points and Authorities In Support of Plaintiff's Motion for Partial Summary Judgment On Attorney's Fees and Costs ("Mem.") at 11) that it substantially prevailed because the Court's June 30, 2018 Minute Order "obligated the FTC to produce records by a date certain."  That Order did no such thing.  Although the parties' July 26, 2018 Joint Status Report included a proposed order with dates for the FTC's processing and production of responsive records, the Court did ***not*** enter that proposed order.  Instead, on June 30, 2018, it only "ORDERED that the parties shall file another joint status report by October 20, 2018."  Such "orders requir[ing] the [agency] to do no more than join with the plaintiff in filing status reports updating the court" on actions taken "do not affect a 'court-ordered change in the legal relationship between the plaintiff and the defendant[,]'" and thus do not make the plaintiff eligible for a fee award under FOIA. *Summers v. DOJ*, 569 F.3d 500, 505 (D.D.C 2009) (quoting *Oil, Chem. & Atomic Workers Int'l Union v. DOE*, 288 F.3d 452, 458 (2002)).  EPIC's insistence that the June 30, 2018 Minute Order required production by a date certain "does not make it so." *Conservation Force v. Jewell*, 160 F. Supp. 3d 194, 204 (D.D.C. 2016) (rejecting plaintiff's *ipse dixit* that court's order was "a production order").

**2. This Lawsuit Did Not Substantially Cause The Release Of Records**

To prevail under the catalyst theory, a plaintiff must establish that the "lawsuit substantially caused the requested records to be released." *ACLU v. U.S. Dep't of Homeland Sec.,* 810 F. Supp. 2d, 267, 275 (D.D.C. 2011) (quoting *Weisberg v. DOJ*, 745 F.2d 1476, 1496 (D.C. Cir. 1984)). "The mere filing of the complaint and subsequent release of the documents is insufficient to establish causation." *Weisberg*, 745 F.2d 1476, 1496.  Instead, the "causation

inquiry must take into account "whether the agency upon actual and reasonable notice of the request, made a good faith effort to search out material and to pass on whether it should be disclosed." *Weisberg*, 745 F.2d at 1496 (quoting *Cox v. U.S. Dep't of Justice*, 601 F.2d 1, 6 (D.C. Cir. 1979). Additional relevant factors include "the time-consuming nature of the search and decisionmaking process," *id.,* "whether the scope of request caused delay in disclosure, and whether the agency was burdened by other duties that delayed its response." *ACLU,* 810 F. Supp. 2d at 267, 275 (quoting *Frye v. EPA*, No. 90-3041, 1992 WL 237370, at 2 (D.D.C. Aug. 31, 1992). "It is the plaintiff's burden to present evidence establishing a direct causal nexus in order to be eligible for attorney's fees under the FOIA." *Pyramid Lake Paiute Tribe of Indians v. U.S. Dep't of Justice*, 750 F.2d 117, 121 (D.C. Cir. 1984).

EPIC's submission falls far short of satisfying its burden. It argues (Mem. 14) that the FTC "had not processed any category of EPIC's FOIA Request or produced responsive records" prior to EPIC's filing of its Complaint on April 20, 2018. But this is factually incorrect. Within a week of receiving EPIC's May 20, 2018, FOIA request (along with multiple other similar FOIA requests), the FTC began to search for records responsive to *each* of EPIC's request specifications. Stearns Decl. ¶¶ 10, 13. Four days before EPIC filed its lawsuit, the FTC made an interim release of the requested Facebook Assessments. *Id.* ¶ 17. The next day, the FTC informed EPIC that the FTC was availing itself of FOIA's 10-working day extension because of the need to search and collect records from other offices and consult with other agency components. *Id.* ¶ 18. And the following day, the FTC informed EPIC that it was in the process of re-reviewing redactions made to the Facebook Assessments released on April 16 to determine whether additional information could be released. *Id.* ¶ 21. This brief history makes plain that the FTC was not resisting the release of these records, but rather, it was working methodically to

respond to EPIC's and other pending requests for the Facebook-related records. EPIC, however, short-circuited the FTC's methodical administrative processing by peremptorily filing suit before the extended 30-working days provided by FOIA had run.

EPIC's suggestion that the FTC's inability to complete its processing of EPIC's FOIA request sooner or provide "a date certain for a determination" (Mem. at 14) support an inference of causation is meritless. An agency may delay response until after the filing of a lawsuit for any number of reasons that have "nothing to do with the filing of the lawsuit but instead with administrative delays due to backlogs of FOIA requests, the volume of responsive records requiring processing, the necessity of inter-agency searches and responses, or a combination of these factors." *Dorsen*, 15 F. Supp. 3d at 118-19. The D.C. Circuit has accordingly held, if "an unavoidable delay accompanied by due diligence in the administrative process was the actual reason for the agency's failure to respond to a request, then it cannot be said that the complainant substantially prevailed in [its] suit." *Church of Scientology*, 653 F.2d at 588 (quoting *Cox*, 601 F.2d at 6) (internal citations omitted)).

To the degree that there was a delay in producing records, it was relatively short and due to a number of factors that had nothing to do with any recalcitrance of the part of the FTC. As demonstrated above, the FTC's FOIA unit needed to conduct searches within and engage in consultation with numerous other agency components. In addition, the FTC was obligated to provide notice to and consult with Facebook and PwC, the submitters of confidential business information in the requested records. Stearns Decl. ¶ 22. The FTC provided that notice before EPIC filed its Complaint, *id*. ¶ 23, but the required consultations took time. The FTC proceeded diligently, and promptly released responsive records on a rolling basis as documents were located and the necessary confidentiality and other withholding determinations were made. *Id*.

¶¶ 26-31. After doing so, the FTC worked diligently over several months to ensure that EPIC was satisfied with the production— responding to various questions and by continuing to engage with Facebook and PwC in an attempt to narrow the issues regarding their confidentiality claims (ultimately without success).[1] *See* p. 5, *supra*. These facts defeat EPIC's catalyst theory claim for attorney fee eligibility.

As support for its argument, EPIC cites (Mem. 13) *EPIC v. DHS*, 811 F. Supp. 2d 216 (D.D.C. 2011). EPIC's reliance on that case, however, is misplaced. There, seven months had elapsed between EPIC's submission of its initial FOIA request and its commencement of litigation. *Id*. at 232. During that lengthy time, the agency did not produce any documents, did not "seek to take advantage of the statutory mechanisms available to extend its response time," and "d[id] not [even] claim to have conducted any substantive searches for records" until prompted by EPIC's Complaint. *Id*. at 233. The FTC's response to EPIC's FOIA request has little in common with the defendant's FOIA response in that case.

EPIC is also mistaken in relying (Mem. 13) on *EPIC v. DHS*, 218 F. Supp. 3d 27 (D.D.C. 2016). There, the agency did not communicate anything to EPIC for four months after initially acknowledging receipt of EPIC's request, *conceded* that EPIC's filing of a Complaint caused it to accelerated its search for responsive records, and did not even begin to discuss how to narrow the FOIA request until a year after receiving it. *Id*. at 42-43. Again, that course of conduct bears no resemblance to the FTC's diligent processing of EPIC's request.[2]

---

[1] EPIC speculates that, had it not filed suit, "Facebook might have succeeded" in preventing the release of even more information. Such naked speculation does not satisfy EPIC's burden to show causation.

[2] The other cases that EPIC cites (Mem. at 13) are also distinguishable. In *Judicial Watch, Inc. v. Dep't of Justice*, 878 F. Supp. 2d 225, 232-33 (D.D.C. 2012), the agency reversed course during the litigation by releasing records that it had previously asserted were exempt from

Accordingly, since the agency was already engaged in diligent efforts to respond to EPIC's request before it filed this suit, and the same results would have been obtained through the administrative process, *see Weisberg*, 848 F.2d at 1270, EPIC's Complaint did not cause the agency to respond to its request.

### B. EPIC Is Not Entitled To Attorney's Fees

Even if EPIC could be said to have prevailed and thus is eligible for an award of attorney's fees, EPIC must also show that it is entitled to them. *Church of Scientology v. Harris*, 653 F.2d at 590. The entitlement inquiry examines (1) the public benefit derived from the disclosure; (2) the commercial benefit to the complainant; (3) the nature of the complainant's interest in the records sought; and (4) "whether the agency's opposition to disclosure had a reasonable basis in law and whether the agency had not been recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior." *See Davy v. CIA*, 550 F. 3d 1155, 1159 (D.C. Cir. 2008). Ultimately, the decision on whether a plaintiff is entitled to attorneys' fees "rests in the sound discretion of the district court." *Church of Scientology*, 653 F.2d at 590.

"Although none of the foregoing four factors is solely dispositive, the failure to satisfy the fourth element of an unreasonable withholding may foreclose a claim for attorney fees or costs." *See Maydak v. U.S. Dep't of Justice*, 579 F. Supp. 2d 105, 109 (D.D.C. 2008) (alterations and quotation marks omitted). Here, there is no close call on the fourth factor, and therefore, the first three factors are far outweighed by the evidence that the FTC worked diligently to produce

---

disclosure; there has been no such reversal here. In *Nat'l Sec. Counselors v. CIA*, 189 F. Supp. 3d 73, 80 (D.D.C. 2016), the agency "d[id] not present any evidence" to countervene the inference of causation warranted by the agency's post-Complaint production of documents after years of nonresposiveness; here, the FTC has presented ample evidence of its pre-Complaint diligence. And *Am. Oversight v. Dep't of Justice*, 375 F. Supp. 3d 50 (D.D.C. 2019), did not even involve application of the catalyst theory.

11

the documents in question. EPIC does not claim that the FTC wrongly withheld any responsive documents or opposed disclosure of responsive documents. EPIC's complaint (Mem. at 19) about the modest delays in the FTC's processing and production of responsive records does not entitle it to a fee award. To, begin, EPIC improperly short-circuited the administrative process by filing suit before the extended 30-day deadline for the FTC's response had run. EPIC appears to be under the misimpression that an agency's failure to meet statutory deadlines automatically entitles it to attorney's fees. If that were so, FOIA requesters could be incentivized continually to make complex requests for voluminous records in order to generate substantial attorneys' fees. Neither Congress nor the courts have countenanced such a scheme. Moreover, as amply demonstrated above, the FTC did not engage in obdurate behavior, and EPIC has failed to demonstrate any recalcitrance on the part of the FTC. Thus, EPIC is not entitled to attorney's fees.

For these reasons and based upon the Defendant's Response to Plaintiff's Statement of Material Facts, Plaintiff's Motion for Partial Summary Judgment on Attorney's Fees and Costs should be denied. A proposed order accompanies this filing.

Dated:  December 13, 2019        Respectfully Submitted,

                                      JESSIE K. LIU, DC Bar # 472845
                                      United States Attorney

                                      DANIEL F. VAN HORN, DC Bar # 924092
                                      Chief, Civil Division

By: _____/s/
       W. MARK NEBEKER, DC Bar # 396739
       Assistant United States Attorney
       555 Fourth Street, N.W.
       Washington, D.C. 20530
       (202) 252-2536
       mark.nebeker@usdoj.gov

OF COUNSEL:

Michele Arington
*Assistant General Counsel for Litigation*
Federal Trade Commission
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580
202) 326-3157
marington@ftc.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER, | )<br>)<br>) |
| Plaintiff, | )<br>)<br>) Civil Action No. 18-942(TJK) |
| v. | )<br>) |
| FEDERAL TRADE COMMISSION, | )<br>) |
| Defendant. | ) |

**FTC'S RESPONSE TO PLAINTIFF'S STATEMENT OF
MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE DISPUTE**

Pursuant to Local Rule 7(h)(1), Defendant the Federal Trade Commission ("FTC") hereby responds to Plaintiff Electronic Privacy Information Center's ("EPIC") Statement of Material Facts, with references to supporting evidence:

EPIC'S Statement Of Fact No. 1

On March 20, 2018, EPIC submitted a Freedom of Information Act ("FOIA") request to the Federal Trade Commission ("FTC") seeking records, in the possession of the FTC, about Facebook that was required by the 2011 consent order. Compl. ¶ 25; Answer ¶¶ 25–28. EPIC sought five categories of records:
   1. The 2013 Facebook Assessments;
   2. The 2015 Facebook Assessments;
   3. The 2017 Facebook Assessments;
   4. All records concerning the person(s) approved by the FTC to undertake the Facebook Assessments; and
   5. All records and communications between the FTC and Facebook regarding the Facebook Assessments.

FTC'S Response to EPIC'S Statement Of Fact No. 1

Undisputed.

EPIC'S Statement Of Fact No. 2

In a letter dated March 29, 2017, the FTC FOIA Office acknowledged receipt of EPIC's FOIA request and granted EPIC's request for expedited processing and a fee waiver. Compl. ¶ 29; Answer ¶ 29. The FTC assigned EPIC's FOIA request reference number FOIA-2018-0066. *Id.*

FTC'S Response to EPIC'S Statement Of Fact No. 2

Undisputed.

EPIC'S Statement Of Fact No. 3

On April 17, 2018, the FTC sent an e-mail to EPIC stating that it was unable to respond to EPIC's FOIA request within the statutory deadline. Compl. ¶ 30; Answer ¶ 30.

FTC'S Response to EPIC'S Statement Of Fact No. 3

Disputed, because this statement does not fully and accurately characterize the FTC's communication. The FTC's April 17, 2018, email to EPIC stated that the FTC was unable to respond to EPIC's request within the 20-working day deadline, but that EPIC's request presented "unusual circumstances" that warranted an extension of the deadline under FOIA, 5 U.S.C. § 552(a)(6)(B)(iii). Stearns Decl. ¶ 8; Exhibit C.

EPIC'S Statement Of Fact No. 4

On April 20, 2018, EPIC filed suit in connection to the above-referenced FOIA request. Prior to EPIC's lawsuit, the FTC did not release responsive records and did not issue a determination required under the FOIA.

FTC'S Response to EPIC'S Statement Of Fact No. 4

Undisputed, as to the date that EPIC filed this suit. The remainder of the statement is disputed. On April 16, 2018, the FTC released records that were partially responsive to categories 1-3 of EPIC's request, posting to the FTC's online reading room the 2013, 2015, and 2017 Facebook Assessments with redactions, as released in response to prior FOIA requests. Stearns Decl. ¶ 17. In a telephone conversation on April 18, 2018, FTC FOIA staff told EPIC

that the FTC was reprocessing those records to determine whether the exemptions the FTC previously invoked to protect confidential commercial information still applied. *Id.* ¶ 21.

EPIC'S Statement Of Fact No. 5

On May 24, 2018, the FTC filed its Answer and argued that EPIC "failed to exhaust its administrative remedies" and that EPIC's claims that the agency failed to process its FOIA request was "moot." Answer 7.

FTC's Response to EPIC's Statement of Fact No. 5

Undisputed.

EPIC's Statement of Fact No. 6

On June 5, 2018, the Court ordered the parties to "meet, confer, and file a joint proposed schedule for briefing or disclosure by June 26, 2018."

FTC's Response to EPIC's Statement of Fact No. 6

Undisputed.

EPIC's Statement of Fact No. 7

One day prior to the June status report deadline, the FTC sent EPIC a draft status report that did not proposed [sic] schedule for disclosure of records. Instead, the draft status report indicated that the agency will upload the first three categories of EPIC's FOIA request to the agency's *Frequently Request Records: Facebook* webpage on June 26, 2018. In the filed status report, the FTC "requested additional time to establish a schedule for processing of the request and disclosure of relevant records" responsive to the other categories of EPIC's FOIA request.

FTC's Response to EPIC's Statement of Fact No. 7

Disputed. The draft status report the FTC sent EPIC proposed a date for the disclosure of records responsive to the first three categories of EPIC's FOIA request: June 26, 2018 (and the FTC released those records on that date). Further disputed, to the extent the quoted language mischaracterizes the June 26, 2018, Joint Status Report. The cited paragraph stated, in full: "The FTC has requested additional time to establish a schedule for processing of the request and disclosure of relevant records. Accordingly, the Parties ask the Court to schedule a subsequent joint status report for July 26, 2018." ECF No. 7 at 2.

EPIC's Statement of Fact No. 8

In the June 26, 2018 status report, the parties agreed that the FTC would "establish a schedule for processing of the request" by July 26, 2018. ECF No. 7. The Court reviewed the June 26, 2018 Joint Status Report and ordered the parties to file another status report on July 26, 2018.

FTC's Response to EPIC's Statement of Fact No. 8

Disputed, to the extent that the quoted language mischaracterizes the June 26, 2018, Joint Status Report.  The cited paragraph stated, in full: "The FTC has requested additional time to establish a schedule for processing of the request and disclosure of relevant records. Accordingly, the Parties ask the Court to schedule a subsequent joint status report for July 26, 2018." ECF No. 7 at 2.

EPIC's Statement of Fact No. 9

On July 25, 2018, EPIC contacted the FTC to propose a production schedule. In an email, EPIC stated that it "propose the following production schedule: The FTC shall process and release all non-exempt records responsive to EPIC's FOIA request by Monday, August 27, 2018." EPIC also proposed "that the parties file another status report 14 days after production (September 10, 2018), allowing EPIC and the agency to confer on whether there are any remaining issues in dispute."

FTC's Response to EPIC's Statement of Fact No. 9

The FTC cannot locate this email and therefore cannot confirm or dispute this statement; however, it is immaterial to EPIC's eligibility for or entitlement to attorney's fees.

EPIC's Statement of Fact No. 10

On July 26, 2018, the FTC responded to EPIC's e-mail with a counterproposal including an "interim production on 9/10/18 and a final production on 10/10/18." EPIC agreed to the modified production schedule and the parties incorporated the schedule into the July 26, 2018 Joint Status Report. ECF No. 8. The parties also submitted a proposed order with the status report that referenced the production schedule explicitly. ECF No. 8-1.

FTC's Response to EPIC's Statement of Fact No. 10

Undisputed.

EPIC's Statement of Fact No. 11

The court reviewed the parties' status report with the agreed upon production schedule and issued a Minute Order on July 30, 2018, ordering the parties to "file another joint status report by October 20, 2018."

FTC's Response to EPIC's Statement of Fact No. 11

Disputed, to the extent that it suggests the Court's July 30, 2018, Minute Order adopted the proposed production schedule. That Order did not require production but only "ORDERED that the parties shall file another joint status report by October 20, 2018."

EPIC's Statement of Fact No. 12

On September 10, 2018, the FTC produced copies of the Facebook privacy assessments as well as 152 pages of records responsive to category 4 of EPIC's FOIA request.

FTC's Response to EPIC's Statement of Fact No. 12

Undisputed.

EPIC's Statement of Fact No. 13

On October 12, 2018, the FTC produced 175 partially redacted pages of records responsive to category 5 of EPIC's FOIA request.

FTC's Response to EPIC's Statement of Fact No. 13

Undisputed.

EPIC's Statement of Fact No. 14

On October 18, 2018, counsel for the FTC contacted EPIC and stated that it was preparing to complete the final production for responsive records for release. The FTC Counsel told EPIC that Facebook opposed the release of some of the processed records and the company was considering filing an intervention in the case. Facebook did not file a motion to intervene at that time.

FTC's Response to EPIC's Statement of Fact No. 14

The FTC cannot locate a record of this communication and therefore cannot confirm or dispute this statement; however, it is immaterial to EPIC's eligibility for or entitlement to attorney's fees.

EPIC's Statement of Fact No. 15

On October 19, 2018, the FTC produced 277 partially redacted pages of records responsive to category 5 of EPIC's FOIA request. This production was the third and final production.

FTC's Response to EPIC's Statement of Fact No. 15

Undisputed.


Dated:  December 13, 2019

                                            Respectfully Submitted,

                                            JESSIE K. LIU, D.C. Bar # 472845
                                            United States Attorney

                                            DANIEL F. VAN HORN, D.C. Bar # 924092
                                            Chief, Civil Division


By:                                     /s/
                                            W. MARK NEBEKER, DC Bar # 396739
                                            Assistant United States Attorney
                                            555 Fourth Street, N.W.
                                            Washington, D.C. 20530
                                            (202) 252-2536
                                            mark.nebeker@usdoj.gov