# EXHIBIT A

# epic.org

Electronic Privacy Information Center
1718 Connecticut Avenue NW, Suite 200
Washington, DC 20009, USA

📞 +1 202 483 1140
🖨 +1 202 483 1248
🐦 @EPICPrivacy
🌐 https://epic.org

VIA EMAIL

March 20, 2018

Sarah Mackey
Chief FOIA Officer
Freedom of Information Act Request
Office of General Counsel
Federal Trade Commission
600 Pennsylvania Avenue, NW
Washington, DC 20580

FOIA 2018-00666

> FEDERAL TRADE COMM'N
> RECV'D
>
> **Mar. 20, 2018**
>
> FOIA BRANCH
> GENERAL COUNSEL

Dear Ms. Mackey:

This letter constitutes an urgent request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and is submitted on behalf of the Electronic Privacy Information Center ("EPIC") to the Federal Trade Commission ("FTC").

EPIC seeks the Facebook assessments, reports ("Facebook Assessments"), and related records required by the 2012 FTC Consent Order.[1]

Documents Requested

(1) The 2013 Facebook Assessments;
(2) The 2015 Facebook Assessments;
(3) The 2017 Facebook Assessments;
(4) All records concerning the person(s) approved by the FTC to undertake the Facebook Assessments; and
(5) All records of communications between the FTC and Facebook regarding the Facebook Assessments.

Background

From 2009 to 2011, EPIC and a coalition of consumer organizations pursued several complaints with the FTC, alleging that Facebook had changed user privacy settings and disclosed the personal data of users to third parties without the consent of users.[2] EPIC had conducted extensive research and documented the instances of Facebook overriding the users' privacy settings to reveal personal information and to disclose, for commercial benefit, user data, and the

---

[1] Consent Order, *In the Matter of Facebook, Inc.*, Docket No. C-4365 (Federal Trade Commission July 27, 2012), https://www.ftc.gov/sites/default/files/documents/cases/2012/08/120810facebookdo.pdf [hereinafter the "2012 FTC Consent Order" or "Final Order"].

[2] *In re Facebook*, EPIC.org, https://epic.org/privacy/inrefacebook/.

Privacy is a Fundamental Right.

personal data of friends and family members, to third parties without their knowledge or
affirmative consent.[3]

In response to a complaint from EPIC and consumer privacy organizations, the FTC
launched an extensive investigation and issued a Preliminary Order against Facebook in 2011
and then a Final Order in 2012.[4] In the press release accompanying the settlement, the FTC
stated that Facebook "deceived consumers by telling them they could keep their information on
Facebook private, and then repeatedly allowing it to be shared and made public."[5]

According to the FTC press statement, the FTC complaint listed several instances in which
Facebook allegedly made promises that it did not keep:

- "In December 2009, Facebook changed its website so certain information that users may
  have designated as private – such as their Friends List – was made public. They didn't
  warn users that this change was coming, or get their approval in advance."

- "Facebook represented that third-party apps that users' installed would have access only
  to user information that they needed to operate. In fact, the apps could access nearly all of
  users' personal data – data the apps didn't need."

- "Facebook told users they could restrict sharing of data to limited audiences – for
  example with 'Friends Only.' In fact, selecting 'Friends Only' did not prevent their
  information from being shared with third-party applications their friends used."

- "Facebook had a 'Verified Apps' program & claimed it certified the security of
  participating apps. It didn't."

- "Facebook promised users that it would not share their personal information with
  advertisers. It did."

- "Facebook claimed that when users deactivated or deleted their accounts, their photos
  and videos would be inaccessible. But Facebook allowed access to the content, even after
  users had deactivated or deleted their accounts."

- "Facebook claimed that it complied with the U.S.- EU Safe Harbor Framework that
  governs data transfer between the U.S. and the European Union. It didn't."[6]

---

[3] *FTC Facebook Settlement*, EPIC.org, https://epic.org/privacy/ftc/facebook/.
[4] *In the Matter of Facebook, Inc., a corporation*, Federal Trade Commission,
https://www.ftc.gov/enforcement/cases-proceedings/092-3184/facebook-inc.
[5] Press Release, Federal Trade Commission, Facebook Settles FTC Charges That It Deceived Consumers
By Failing To Keep Privacy Promises (Nov. 29, 2011), https://www.ftc.gov/news-events/press-
releases/2011/11/facebook-settles-ftc-charges-it-deceived-consumers-failing-keep.
[6] *Id.*

The FTC press statement further states that under the proposed settlement Facebook is:

- "barred from making misrepresentations about the privacy or security of consumers' personal information;"

- "required to obtain consumers' affirmative express consent before enacting changes that override their privacy preferences;"

- "required to prevent anyone from accessing a user's material more than 30 days after the user has deleted his or her account;"

- "required to establish and maintain a comprehensive privacy program designed to address privacy risks associated with the development and management of new and existing products and services, and to protect the privacy and confidentiality of consumers' information; and"

- "required, within 180 days, and every two years after that for the next 20 years, to obtain independent, third-party audits certifying that it has a privacy program in place that meets or exceeds the requirements of the FTC order, and to ensure that the privacy of consumers' information is protected."[7]

The Reporting Requirements of the 2012 Consent Order

The reporting requirements that the FTC imposed on Facebook are set out in more details in the text of the Final Order. According to the 2012 Final Order of the Federal Trade Commission:

[The] Respondent [Facebook] shall, no later than the date of service of this order, establish and implement, and thereafter maintain, a comprehensive privacy program that is reasonably designed to (1) address privacy risks related to the development and management of new and existing products and services for consumers, and (2) protect the privacy and confidentiality of covered information. Such program, the content and implementation of which must be documented in writing, shall contain controls and procedures appropriate to Respondent's size and complexity, the nature and scope of Respondent's activities, and the sensitivity of the covered information, including:

    A. the designation of an employee or employees to coordinate and be responsible for the privacy program.

    B. the identification of reasonably foreseeable, material risks, both internal and external, that could result in Respondent's unauthorized collection, use, or disclosure of covered information and an assessment of the sufficiency of any safeguards in place to control these risks. At a minimum, this privacy risk assessment should include consideration of risks in each area of

---

[7] Id.

relevant operation, including, but not limited to: (1) employee training and management, including training on the requirements of this order, and (2) product design, development, and research.

C. the design and implementation of reasonable controls and procedures to address the risks identified through the privacy risk assessment, and regular testing or monitoring of the effectiveness of those controls and procedures.

D. the development and use of reasonable steps to select and retain service providers capable of appropriately protecting the privacy of covered information they receive from Respondent and requiring service providers, by contract, to implement and maintain appropriate privacy protections for such covered information.

E. the evaluation and adjustment of Respondent's privacy program in light of the results of the testing and monitoring required by subpart C, any material changes to Respondent's operations or business arrangements, or any other circumstances that Respondent knows or has reason to know may have a material impact on the effectiveness of its privacy program.[8]

Moreover, the Final Order stated:

Respondent shall obtain initial and biennial assessments and reports ("Assessments") from a qualified, objective, independent third-party professional, who uses procedures and standards generally accepted in the profession. A person qualified to prepare such Assessments shall have a minimum of three (3) years of experience in the field of privacy and data protection. All persons selected to conduct such Assessments and prepare such reports shall be approved by the Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, Washington, D.C. 20580, in his or her sole discretion. Any decision not to approve a person selected to conduct such Assessments shall be accompanied by a writing setting forth in detail the reasons for denying such approval. The reporting period for the Assessments shall cover: (1) the first one hundred and eighty (180) days after service of the order for the initial Assessment, and (2) each two (2) year period thereafter for twenty (20) years after service of the order for the biennial Assessments. Each Assessment shall:

A. set forth the specific privacy controls that Respondent has implemented and maintained during the reporting period;

B. explain how such privacy controls are appropriate to Respondent's size and complexity, the nature and scope of Respondent's activities, and the sensitivity of the covered information;

---

[8] 2012 Consent Order, *supra* note 1, at 5–6.

C. explain how the privacy controls that have been implemented meet or exceed the protections required by Part IV of this order; and

D. certify that the privacy controls are operating with sufficient effectiveness to provide reasonable assurance to protect the privacy of covered information and that the controls have so operated throughout the reporting period.

Each Assessment shall be prepared and completed within sixty (60) days after the end of the reporting period to which the Assessment applies. Respondent shall provide the initial Assessment to the Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, Washington, D.C. 20580, within ten (10) days after the Assessment has been prepared. All subsequent biennial Assessments shall be retained by Respondent until the order is terminated and provided to the Associate Director of Enforcement within ten (10) days of request.[9]

Cambridge Analytica Breach

On March 16, 2018, Facebook admitted the unlawful transfer of 50 million user profiles to the data mining firm Cambridge Analytica, which harvested the data obtained without consent to influence the 2016 U.S. presidential election.[10] Relying on the data provided by Facebook, Cambridge Analytica was able to collect the private information of approximately 270,000 users and their extensive friend networks under false pretenses as a research-driven application.[11]

This is in clear violation of the 2012 Consent Order, which states that Facebook "shall not misrepresent in any manner, expressly or by implication … the extent to which [Facebook] makes or has made covered information accessible to third parties; and the steps [Facebook] takes or has taken to verify the privacy or security protections that any third party provides."[12]

Under the Final Consent Order, Facebook's initial assessment was due to the FTC on April 13, 2013, and the subsequent reporting deadlines were in 2015 and 2017. Cambridge Analytica engaged in the illicit collection of Facebook user data from 2014 to 2016, encompassed by the reporting period of the requested assessments.

Request for Expedition

EPIC is entitled to expedited processing of this request under the FOIA and the FTC's FOIA regulations. 5 U.S.C. § 552(a)(6)(E)(v)(II); 16 C.F.R. § 4.11(a)(1)(i)(G). Specifically, this request is entitled to expedited processing because, first, there is an "urgency to inform the

---

[9] *Id.* at 6–7.
[10] Press Release, Facebook, Suspending Cambridge Analytica and SCL Group from Facebook (Mar. 16, 2018), https://newsroom.fb.com/news/2018/03/suspending-cambridge-analytica/.
[11] *Id.*
[12] 2012 Consent Order, *supra* note 1, at 3–4.

public concerning [an] actual . . . Government activity," and second, this request is made by "a person primarily engaged in disseminating information." 16 C.F.R. § 4.11(a)(1)(i)(G).

First, there is an "urgency to inform the public concerning [an] actual . . . Government activity." § 4.11(a)(1)(i)(G). The "actual . . . Government activity" at issue is the FTC's supervision of Facebook and its enforcement of the 2012 Consent Order.

The "urgency" to inform the public about this activity is clear given that on March 18, 2018, two former FTC officials who crafted the consent decree stated that Facebook may have violated the decree and could be liable in civil fines.[13] The FTC's failure to enforce the 2012 Consent Order has not only jeopardized consumer privacy but has allowed a controversial firm to interfere in the 2016 Presidential election.

Additionally, release of this information is urgent because both U.S. and British lawmakers are demanding Facebook chief Mark Zuckerberg to testify publicly and explain how the information of 50 million users ended up in the possession of a foreign data analysis firm.[14] In a joint letter to Facebook, Senate Commerce Committee Chairman Senator John Thune (R-S.D.), Senator Roger Wicker (R-Miss.) and Senator Jerry Moran (R-Kan.) wrote, "the possibility that Facebook has either not been transparent with consumers or has not be able to verify that third party app developers are transparent with consumers is troubling." Senator Edward Markey (D-Mass.) said "in light of these allegations, and the ongoing Federal Trade Commission (FTC) consent decree that requires Facebook to obtain explicit permission before sharing data about its users, the Committee should move quickly to hold a hearing on this incident, which has allegedly violated the privacy of tens of millions of Americans."[15] On March 19, 2018, Sen. Ron Wyden (D-OR.) sent a letter to Facebook demanding details on the extent of Facebook's misuses in its user's private information stating:

> The troubling reporting on the ease with which Cambridge Analytica was able to exploit Facebook's default privacy settings for profit and political gain throws into question not only the prudence . . . of Facebook's business practices . . . but also raises serious concerns about the role Facebook played in facilitating and permitting the covert collection and misuse of consumer information.[16]

---

[13] Craig Timberg & Tony Romm, *Facebook May Have Violated FTC Privacy Deal, Say Former Federal Officials, Triggering Risk of Massive Fines*, Washington Post (Mar. 18, 2018), https://www.washingtonpost.com/news/the-switch/wp/2018/03/18/facebook-may-have-violated-ftc-privacy-deal-say-former-federal-officials-triggering-risk-of-massive-fines/.

[14] Craig Timberg & Tony Romm, *U.S. and British Lawmakers Demand Answers from Facebook Chief Executive Mark Zuckerberg*, Washington Post (Mar. 18, 2017), https://www.washingtonpost.com/news/the-switch/wp/2018/03/18/u-s-and-british-lawmakers-demand-answers-from-facebook-chief-executive-mark-zuckerberg/.

[15] Letter from Edward J. Markey, Senator of Massachusetts, to Hon. John Thune, Chairman, Comm. on Commerce, Sci., and Transp., et. al. (Mar. 19, 2018), https://www.markey.senate.gov/imo/media/doc/Facebook%20Cambridge%20Analytica.pdf.

[16] Letter from Ron Wyden, Senator of Oregon, Ranking Member of Comm. on Fin., to Mark Zuckerberg, Chief Exec. Officer, Facebook (Mar. 19, 2018), https://www.wyden.senate.gov/imo/media/doc/wyden-cambridge-analytica-to-facebook.pdf.

The Massachusetts Attorney General has also opened an investigation into Facebook's involvement with Cambridge Analytica.[17] The Department of Justice's Special Counsel Robert Mueller has demanded emails of Cambridge Analytica employees who worked for the Trump team as part of his investigation into the interference of the 2016 Presidential election.[18] And the British Information Commissioner has called for the release of additional information.[19]

Second, EPIC is an organization "primarily engaged in disseminating information" to the public because it is a representative of the news media. 16 C.F.R. § 4.11(a)(1)(i)(G). As the Court explained in *EPIC v. DOD,* "EPIC satisfies the definition of 'representative of the news media'" entitling it to preferred fee status under the FOIA. 241 F. Supp. 2d 5, 15 (D.D.C. 2003).

In submitting this request for expedited processing, I certify that this explanation is true and correct to the best of my knowledge and belief. 16 C.F.R. § 4.11(a)(1)(i)(G); 5 U.S.C. § 552(a)(6)(E)(vi).

Request for "News Media" Fee Status and Public Interest Fee Waiver

EPIC is a "representative of the news media" for fee classification purposes. *EPIC v. DOD,* 241 F. Supp. 2d 5 (D.D.C. 2003). Based on EPIC's status as a "news media" requester, EPIC is entitled to receive the requested record with only duplication fees assessed. 16 C.F.R. § 4.8(b)(2)(iii); 5 U.S.C. § 552(a)(4)(A)(ii)(II).

Further, any duplication fees should also be waived because (i) disclosure of the requested information is "likely to contribute significantly to the public understanding of the operations or activities of the government" and (ii) disclosure of the information is not "primarily in the commercial interest" of EPIC, the requester. 16 C.F.R. §§ 4.8(2)(i)–(ii); 5 U.S.C. § 552(a)(4)(A)(iii). EPIC's request satisfies this standard based on the FTC's considerations for granting a fee waiver. 16 C.F.R. § 4.8(e)(2).

*(1) Disclosure of the requested information is likely to contribute to the public understanding of the operations or activities of the government.*

First, disclosure of the requested documents is in the public interest because it is "likely to contribute significantly to public understanding of the operations or activities of the government." 16 C.F.R. § 4.8(2)(i). The FTC components evaluate these four considerations to determine whether this requirement is met: (i) the subject matter of the request "concerns the operation and activities of the Federal government"; (ii) the disclosure "is likely to contribute to

[17] Jennifer Hansler, *Massachusetts AG to investigate Facebook, Cambridge Analytica,* CNN (Mar. 18, 2018), https://www.cnn.com/2018/03/18/politics/massachusetts-ag-cambridge-analytica/index.html.
[18] Rebecca Ballhaus, *Mueller Sought Emails of Trump Campaign Data Firm,* Wall Street Journal (Dec. 15, 2017), https://www.wsj.com/articles/mueller-sought-emails-of-trump-campaign-data-firm-1513296899.
[19] Statement, Information Commissioner's Office, ICO Statement: Investigation Into Data Analytics For Political Purposes (Mar. 19, 2018), https://ico.org.uk/about-the-ico/news-and-events/news-and-blogs/2018/03/ico-statement-investigation-into-data-analytics-for-political-purposes/.

an understanding of these operations or activities"; (iii) the disclosure "is likely to contribute [to] public understanding" of the issue; and (iv) the disclosure will provide a "significant" contribution to public understanding; §§ 4.8(2)(i)(A)–(D).

On the first consideration, the subject of the request self-evidently concerns identifiable "operations or activities of the Federal government." 16 C.F.R. § 4.8(2)(i)(A). As previously stated, the subject of this request self-evidently concerns the FTC's enforcement of its own 2012 Consent Order against Facebook.

On the second consideration, disclosure "is likely to contribute to an understanding of these operations or activities" because the FTC has not published any of the biennial Assessments that Facebook is required to prepared. 16 C.F.R. § 4.8(2)(i)(B). The FTC has relied on consent orders containing independent assessments to resolve privacy violations by several major companies, including Facebook, MySpace, and Google. Therefore, the transparency and accountability surrounding these settlements is important, and the public has an interest in the prompt evaluation of the biennial assessment's effectiveness.

On the third consideration, disclosure "is likely to contribute [to] public understanding" of the issue. 16 C.F.R. § 4.8(2)(i)(C). EPIC is a registered non-profit organization committed to privacy, open government, and civil liberties.[20] EPIC consistently publishes critical documents obtained through the FOIA and through litigation on its robust website for educational purposes.[21] Moreover, EPIC publishes an award-winning email and online newsletter that always highlights critical documents obtained through the FOIA.[22]

On the fourth consideration, the disclosure will provide a "significant" contribution to public understanding. 16 C.F.R. § 4.8(2)(i)(D). Since the 2012 Consent Order, the public has been left in the dark about whether the FTC has been appropriately enforcing its 2012 Consent Order and investigating any potential violations by Facebook. The release of this information would significantly contribute to the public understanding of whether Facebook is complying with the original order and whether the FTC has been fulfilling its function in safeguarding online privacy.

*(2) Disclosure of the information is not primarily in the commercial interest of the requester*

Second, disclosure of the information is not "primarily in [EPIC's] commercial interest." 16 C.F.R. § 4.8(2)(ii)(A). Again, EPIC is a registered non-profit organization committed to privacy, open government, and civil liberties. EPIC has no commercial interest in the requested records and has established that there is significant public interest in the requested records.

For these reasons, a full fee waiver should be granted for EPIC's request.

---

[20] *About EPIC*, EPIC.org, http://epic.org/epic/about.html.

[21] EPIC.org, https://www.epic.org/.

[22] *EPIC Alert*, EPIC.org, https://www.epic.org/alert/.

<u>Conclusion</u>

Thank you for your consideration of this request. I anticipate your determination on our request within ten calendar days. 16 C.F.R. § 4.11(a)(1)(i)(G); 5 U.S.C. § 552(a)(6)(E)(ii)(I). For questions regarding this request I can be contacted at 202-483-1140 x104 or Zhou@epic.org, cc: FOIA@epic.org.

Respectfully submitted,

*/s Enid Zhou*
Enid Zhou
EPIC Open Government Fellow

*/s Sunny Kang*
Sunny Kang
EPIC International Consumer Counsel

# EXHIBIT B

| | |
|---|---|
| **From:** | Hill, Jonathan |
| **To:** | "Enid Zhou" |
| **Subject:** | RE: FOIA Request Submission |
| **Date:** | Thursday, March 29, 2018 5:24:00 PM |
| **Attachments:** | FTC FOIA 2018-00666 ltr 032918.pdf |

Ms. Zhou,

This acknowledges receipt of your FOIA request. For your records, the reference number is 2018-00666. Please see the attached determination on your expedited treatment and public interest fee waiver requests.

You may check the status of your FOIA request by visiting http://www.ftc.gov/about-ftc/foia/foia-reading-rooms/track-your-foia-request. This report is updated at the end of each month.

Thank you,

**Jonathan Hill**
Attorney, Office of the General Counsel
Federal Trade Commission
600 Pennsylvania Ave., NW
Washington, DC 20580
(202) 326-2684 (T)
(202) 326-2477 (F)


**From:** Enid Zhou <zhou@epic.org>
**Sent:** Tuesday, March 20, 2018 4:44 PM
**To:** FOIA <FOIA@ftc.gov>
**Subject:** FOIA Request Submission

Dear FOIA Officer:

Please see attached for EPIC's FOIA request to the FTC. Thank you.

Sincerely,

Enid Zhou
EPIC Open Government Fellow
1718 Connecticut Ave, N.W.
Suite 200
Washington, DC 20009 | (202) 483-1140 x104
FOIA@epic.org, zhou@epic.org

# EXHIBIT C

| | |
|---|---|
| **From:** | Hill, Jonathan |
| **To:** | "Enid Zhou" |
| **Subject:** | RE: FOIA Request Submission |
| **Date:** | Tuesday, April 17, 2018 4:15:00 PM |

Ms. Zhou,

I write to inform you that we will be unable to respond to your FOIA request described below request within the statutory 20-business day deadline as codified in 5 U.S.C. § 552(a)(6)(A)(i).

The FOIA, as amended in 2002, allows for an extension of the 20-day deadline if one of three types of "unusual circumstances" exist.  See 5 U.S.C. § 552(a)(6)(B)(iii).  Your request falls under the following circumstances:

> (+) The need to search for and collect the requested records from field facilities or other establishments that are separate from the office processing the request; and

> (+) The need for consultation, which shall be conducted with all practicable speed, with another agency or two or more agency components having a substantial interest in the determination of the request or among two or more components of the agency having substantial subject matter interest therein.

You may seek dispute resolution services from the FTC FOIA Public Liaison Richard Gold via telephone at 202-326-3355 or via e-mail at rgold@ftc.gov; or from the Office of Government Information Services via e-mail at ogis@nara.gov, via fax at 202-741-5769, or via mail at Office of Government Information Services (OGIS), National Archives and Records Administration, 8601 Adelphi Road, College Park, MD 20740.

We are continuing to process your request at this time. If you have any questions regarding your request, or if you would like to narrow your request to reduce the necessary response time, please contact me.

Thank you,

Jonathan

---

**From:** Hill, Jonathan
**Sent:** Thursday, March 29, 2018 5:25 PM
**To:** 'Enid Zhou' <zhou@epic.org>
**Subject:** RE: FOIA Request Submission

Ms. Zhou,

This acknowledges receipt of your FOIA request.  For your records, the reference number is 2018-00666.  Please see the attached determination on your expedited treatment and public interest fee

waiver requests.

You may check the status of your FOIA request by visiting http://www.ftc.gov/about-ftc/foia/foia-reading-rooms/track-your-foia-request.  This report is updated at the end of each month.

Thank you,

**Jonathan Hill**
Attorney, Office of the General Counsel
Federal Trade Commission
600 Pennsylvania Ave., NW
Washington, DC 20580
(202) 326-2684 (T)
(202) 326-2477 (F)

---

**From:** Enid Zhou <zhou@epic.org>
**Sent:** Tuesday, March 20, 2018 4:44 PM
**To:** FOIA <FOIA@ftc.gov>
**Subject:** FOIA Request Submission

Dear FOIA Officer:

Please see attached for EPIC's FOIA request to the FTC. Thank you.

Sincerely,

Enid Zhou
EPIC Open Government Fellow
1718 Connecticut Ave, N.W.
Suite 200
Washington, DC 20009 | (202) 483-1140 x104
FOIA@epic.org, zhou@epic.org

EXHIBIT D

| From: | Enid Zhou |
|---|---|
| To: | Hill, Jonathan |
| Subject: | FOIA reference no: 2018-00666 |
| Date: | Thursday, April 19, 2018 9:42:36 AM |

Dear Jonathan,

Thank you for your assistance regarding EPIC's FOIA request, reference no 2018-00666. Per our phone conversation on April 18, 2018 at approximately 4:45pm, we discussed bifurcating EPIC's FOIA request by prioritizing the records in category one, as we do not believe the "unusual circumstances" exception applies to these records. The records are: the 2013, 2015, and 2017 Facebook Assessments and initial report.

Prior to our phone conversation, I spoke with FOIA Public Liaison Richard Gold to discuss the same issues I raised with you. He confirmed with me that he will look into this issue and confirm today whether the "unusual circumstances" exception do not apply to the reports, which will result in these records being processed under the statutory deadline. I also want to confirm that agency has already indicated that the processing of EPIC's FOIA request will be expedited.

Sincerely,

Enid Zhou
EPIC Open Government Fellow
1718 Connecticut Ave, N.W.
Suite 200
Washington, DC 20009 | (202) 483-1140 x104
FOIA@epic.org, zhou@epic.org