IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER<br><br>    Plaintiff,<br><br>    v.<br><br>FEDERAL TRADE COMMISSION<br><br>    Defendant. | Civil Action No. 18-942 (TJK) |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT ON ATTORNEY'S FEES AND COSTS**

In its opposition, the Federal Trade Commission ("FTC") misconstrues the fee eligibility and entitlement standards under the FOIA, 5 U.S.C. § 552(a)(4)(E)(i), and focuses on issues not relevant to the Court's fee determination. The agency did not issue a determination or begin processing categories 4 and 5 of EPIC's FOIA Request prior to the filing of EPIC's complaint. Then during the course of this suit the parties negotiated over, and the agency agreed to, a schedule for prompt release of responsive records related to the Commission's interactions with Facebook in the years following the 2011 Consent Order. These records were of extreme and urgent public interest in light of the Cambridge Analytica scandal and the Commission's failure to enforce the Facebook Consent Order. Waiting years, or even months, to obtain these records was not an option, so EPIC filed suit. And as a result of EPIC's litigation efforts and this Court's order adopting a production schedule, EPIC promptly obtained release of the requested records. EPIC is both eligible and entitled to recover attorney's fees for the time its attorneys spent on this case.

### I.   EPIC's Suit Was Timely

The FTC's claim that EPIC "short-circuited the administrative process" is false. Def.'s Opp'n 1, 9, 12. EPIC's suit was timely, and necessary in light of the urgency of its request. EPIC filed suit on March 20, 2018, and sought expedited processing, which the FTC granted. Compl. ¶¶ 25–29. The Commission did not issue a determination within the 20-day statutory deadline; instead, it purported to claim an extension under the statute's "unusual circumstances" provision. Def.'s Opp'n, Ex C. But the Commission did not satisfy the statutory requirements because its notice did not indicate "the date on which a determination is expected to be dispatched." 5 U.S.C. § 552(a)(6)(B)(i); *see* Compl. ¶ 31, ECF No. 1; Answer ¶ 31, ECF No. 6. Therefore, EPIC had constructively exhausted its administrative remedies as of the date the Complaint was filed—April 20, 2018 (32 calendar days and 23 working days after the FTC received EPIC's FOIA Request). The Commission did not move to dismiss EPIC's suit for failure to exhaust and there is no question that the Court has jurisdiction over the case. EPIC acted expeditiously to protect its rights under the FOIA, it did not "short-circuit" any process.

### II.   EPIC is Eligible for Attorney's Fees

The FTC in its opposition ignores the key facts in this case that establish EPIC's eligibility and entitlement to recover fees. First, the majority of the records produced by the Commission in this case were the category 4 and 5 records produced under the schedule negotiated between EPIC's counsel and the FTC's counsel on July 25–26, 2018, and approved by the Court in the July 30, 2018, Minute Order. Second, the Commission never discussed the processing of category 4 and 5 records prior to June 26, 2018, Joint Status Report, and never mentioned any earlier efforts to search for such records until the declaration filed in the fee opposition on November 22, 2019. Third, the Commission has acknowledged that Facebook was

pushing the agency not to release category 4 and 5 records and was threatening possible litigation to block the proposed release. *See* Def.'s Opp'n. at 5; Joint Status Report, ECF No. 8 at 2. Finally, the Commission does not even attempt to argue that these category 4 and 5 records would have been produced on this expedited basis if EPIC had not filed suit.

### A.     EPIC obtained relief through a judicial order.

In support of its argument that the Court's June 30, 2018 Minute Order was not a court-order that changed the legal relationship between EPIC and the FTC, the FTC erroneously relies on *Conservation Force v. Jewell*, 160 F. Supp. 3d 194 (D.D.C. 2016), and *Summers v. DOJ*, 569 F.3d 500 (D.D.C 2009). *See* Def.'s Opp'n. at 7, ECF No. 29. Both of those cases are easily distinguishable because they did not concern an explicit production schedule.

In *Conservation Force*, the court denied the agency's motion for summary judgment on the ground that some exemptions were insufficiently explained and allowed the agency to choose between releasing additional information or providing a Vaughn index and/or declaration to support its withholdings. *Conservation Force v. Jewell*, 160 F. Supp. 3d at 204. The agency's refusal to produce more documents would not have violated the court order if the agency provided a Vaughn index or affidavits to its claimed exemptions. Likewise, in *Summers*, three identical district court orders ordering the plaintiff and FBI to file joint status reports did not constitute relief order by the court because these status reports solely updated the court "on any voluntary disclosures the agency may have made." *Summers v. DOJ*, 569 F.3d at 505. In each status report, the *Summers* district court "ordered that the parties file another joint status report by [a specific date] indicating the additional disclosures defendant has made to plaintiff and whether plaintiff intends to compel the release of any withholdings." *Id.* (internal quotations omitted). The FBI would not have violated these court orders if it refused to release

information. The orders "merely required the parties to keep the court informed of defendant's releases and plaintiff's satisfaction with defendant's decisions." *Summers v. DOJ* 2007 WL 2111049, at *2 (D.D.C. July 23, 2007), *aff'd sub nom. Summers v. DOJ*, 569 F.3d 500 (D.C. Cir. 2009).

That is not what happened in this case. The FTC was legally obligated to produce records responsive to EPIC's request, had not proposed a schedule for doing so, and finally agreed to a schedule in the course of the litigation. Joint Status Report, ECF No. 8. The Court accepted this schedule and ordered the parties to file a status report on a specific date that the parties proposed after the production would be complete. July 30, 2018, Minute Order. The Court order was clearly an operationalization of the parties' proposed production schedule, which the Court had requested in its June 5, 2018, Minute Order.

### B. EPIC's lawsuit substantially caused the release of records.

The FTC's affidavit is not sufficient to support the conclusion that the Commission would have promptly produced records responsive to categories 4 and 5 if EPIC had not filed suit. Absent any evidence to the contrary, the record supports the conclusion that EPIC's suit was a catalyst for the prompt release of records responsive to categories 4 and 5. *See EPIC v. DHS*, 218 F. Supp. 3d 27, 42 (D.D.C. 2016).

In support of its opposition, the FTC has filed a declaration from its FOIA Liaison, Ms. Dione Jackson Stearns ("Sterns Declaration"). This declaration does not support the conclusion that the Commission was planning to process and produce records responsive to categories 4 and 5 of EPIC's FOIA Request prior to this litigation. The Stearns Declaration focuses primarily on the production of the Facebook Assessments. But the Commission had already told EPIC on April 17, 2018, that it was "re-reviewing" the Facebook Assessments with "fresh eyes" in light

of increased public interest in the records. Compl. ¶ 33; Answer ¶ 33. Those reprocessed assessments were not the focus of EPIC's litigation; they did not make up the majority of the responsive records produced and they were not the focus of the exemption claims that EPIC contested. The majority of the records produced in this case, which were responsive to categories 4 and 5 of EPIC's request, were produced under the production schedule negotiated by EPIC's counsel and the FTC's counsel on July 25–26, 2018. The production schedule was adopted in the course of the litigation, and the declaration of the FTC FOIA Liaison makes no mention of that production schedule.

The only thing that the Stearns' Declaration reveals about the Commission's pre-litigation treatment of categories 4 and 5 of EPIC's request is that initial searches were tasked to the Division of Enforcement and Division of Privacy and Identity Protection ("DPIP") on April 4–5, 2018. Declaration of Dione Jackson Stearns ("Sterns Decl." ¶ 13–16, ECF No. 29-1. The FTC did begin to receive responses from agency components until after EPIC filed suit, and also tasked additional searches on May 2–3, 2018. Sterns Decl. ¶¶ 24–25. The agency never informed EPIC about any of these searches and never mentioned the processing of categories 4 and 5 until the June 26, 2018, Joint Status Report, where the parties agreed to "establish a schedule for processing of the request" and then file another status report by July 26, 2018. Joint Status Report, ECF No. 7. The FTC never proposed a schedule for production of category 4 and 5 records until its *response* to EPIC's proposed production schedule on July 26, 2018 (the day the status report was due and more than three months after EPIC filed suit). *See* Joint Status Report, ECF No. 8.

Courts in this district have made clear that the mere tasking of a search is not sufficient to establish "diligence in responding" to a FOIA request and to negate eligibility. *EPIC v. DHS*,

218 F. Supp. 3d at 42; *see Cox v. DOJ*, 601 F.2d 1, 6 (D.C. Cir. 1979) (noting the "unavoidable delay accompanied by due diligence" standard); *Church of Scientology of Cal. v. Harris*, 653 F.2d 584, 588 (D.C. Cir. 1981) (same). As the court noted in *EPIC v. DHS*, cases where plaintiffs are denied eligibility was based on agency good faith and diligence where the agency has shown that "the 'bulk of the work to process' plaintiff's FOIA request was completed before the plaintiff filed its FOIA suit." *EPIC v. DHS*, 218 F. Supp. 3d at 42 (quoting *Harvey v. Lynch*, 178 F. Supp. 3d 5, 7 (D.D.C. 2016)). The FTC's attempts to distinguish *EPIC v. DHS* are unavailing. While it is true that the agency in *EPIC v. DHS* "conceded that EPIC's filing of the complaint caused it to accelerated [sic] its search for responsive records," Def.'s Opp'n 10, the DHS's conduct in that case is analogous to the FTC's conduct in this case. During the four-month period between when DHS received EPIC's FOIA request and EPIC filed its administrative appeal, the DHS had "tasked out the search" for responsive records and discussed appropriate ways to proceed in searching for records. *EPIC v. DHS*, 218 F. Supp. 3d at 42. But the court found that the record was insufficient because the "bureaucratic descriptions [gave] very little insight into what, if any, concrete steps the agency was taking to address EPIC's FOIA request." *Id*. Then when EPIC later discussed the request with the agency, DHS "did not communicate a plan of action or timeline for responding to the request." *Id*. Here the FTC acted in a similar way—the Commission merely tasked out a request to search for responsive documents in two divisions and did not provide a date certain for the determination. Stearns Decl. ¶¶ 13–14, 16. Prior to litigation, the FTC never even informed EPIC that it was searching for records responsive to categories 4 and 5 of EPIC's request. The FTC's Declaration does not provide any further detail regarding the agency's timeline for processing records for the last two categories absent EPIC's suit.

The FTC also mentions the "scope" of the request as a relevant factor considered by the courts in *ACLU v. DHS*, 810 F. Supp. 2d 267 (D.D.C. 2011), and *EPIC v. DHS*, 218 F. Supp. 3d 27, but the Commission has never called into question the scope of EPIC's request in this case. It is clear from the record that EPIC's request was not overly broad. EPIC's FOIA request sought a specific set of records within a given time frame, between specific parties, and the FTC tasked a search for responsive records with "four specifications." *See* Stearns Decl. ¶ 13. The FTC never asked EPIC to narrow the scope of its request or indicate that EPIC's original request was overly broad as a basis for delay under 5 U.S.C. § 552(a)(6)(B)(ii). The FTC also has not provided sufficient evidence to show that it was burdened with other duties that would delay its response in provided records to EPIC for categories 4 and 5. For instance, there is no evidence that the FTC faces an extensive backlog of FOIA requests or other administrative difficulties that would have prevented the agency to issue a determination by the statutory deadline prior to EPIC's suit.

The FTC's discussion of the consultation "with Facebook and PwC" is also not an excuse for delay. Def.'s Opp'n. 9. None of the relevant statutory or regulatory provisions require a consultation period between the agency and private companies. *See* Executive Order 12,600, 15 U.S.C. § 57b-2(c), and 16 C.F.R. § 4.10(e) merely require the FTC to provide a pre-disclosure *notification* 10 days prior to the disclosure of information. The agency has the discretion to release submitter-identified confidential commercial information if the information does not fall within a FOIA exemption. If a party objects to the release of this information, they are entitled to bring action in court (as Facebook threatened to do here). *See* 15 U.S.C. § 57b-2(c)(3); 16 C.F.R. § 4.10. Any further delay due to a consultation period with Facebook and PwC is unjustified within the meaning of the FOIA. In a footnote, the FTC claims that EPIC's "naked speculation" that had EPIC not filed suit, Facebook might have succeeded in preventing the release of

information does not satisfy EPIC's burden to show causation. Def.'s Opp'n. 10 n.1. But the FTC told EPIC on October 18, 2018 that Facebook opposed the release of some of the records in the final production, and the FTC does not dispute this in their response to EPIC's statement of material facts. Had EPIC not initiated this lawsuit, there is no evidence that the FTC would have produced records promptly, or that they would have overcome the opposition of Facebook to release all of the records included in the final production.

For the above reasons, EPIC's lawsuit substantially caused the release of records, making it eligible for attorney's fees and costs under the FOIA.

### III. EPIC is Entitled to Attorney's Fees

The FTC does not challenge, and therefore concedes, that EPIC satisfies the first three prongs of the fee entitlement inquiry. EPIC has shown that (1) there is a strong public interest in disclosing records about communications between the FTC and Facebook; (2) EPIC derived no commercial benefit from the release of this information or the lawsuit; and (3) EPIC's mission to disseminate information regarding privacy issues falls within the public-interest, scholarly, and journalistic oriented goals that is promoted by the FOIA. But nevertheless, the Commission argues that EPIC is not entitled to fees because "the FTC worked diligently to produce the documents in question." Def.'s Opp'n 11–12. That is simply not the test that courts in this Circuit have adopted for entitlement.

The FTC is wrong on the law. "The only instance in which the fourth factor would be dispositive is if 'the legal basis for holding the records is correct.'" *Campaign for Responsible Transplantation v. FDA*, 593 F. Supp. 2d 236, 244 (D.D.C. 2009) (quoting *Chesapeake Bay Found., Inc. v. U.S. Dep't of Agric.,* 11 F.3d 211, 216 (D.C. Cir. 1993)). The Commission had no legal basis to withhold the responsive records that it ultimately produced to EPIC in this case.

The agency also had no legal basis to fail to issue a determination within the 20-day statutory deadline. Even if the FTC had a "colorable basis in law" for not producing records in a timely manner, the factor must be weighed against the other three factors. *EPIC v. FBI*, 72 F. Supp. 3d 338, 348 (D.D.C. 2014). For example, in *Judicial Watch, Inc. v. DOJ*, the court found that the agency's failure to respond to plaintiff's FOIA request in a timely fashion as required under the FOIA weighed in favor of a fee award. *Judicial Watch, Inc. v. DOJ*, 774 F. Supp. 2d 225, 231 (D.D.C. 2011). Since the agency has conceded that the other three factors favor an award of fees to EPIC, the Court should find that EPIC is entitled to recover fees under the FOIA.

The FTC is also wrong on the facts; it was not diligent in responding to EPIC's FOIA Request. The mere tasking of a search is not sufficient to satisfy an agency's legal obligations under the FOIA. *EPIC v. DHS*, 218 F. Supp. 3d at 42. The FTC failed to issue a determination by the statutory deadline and improperly claimed "unusual circumstances" without providing notice of a proposed date for the determination. Compl. ¶ 31; Answer ¶ 31. Furthermore, the FTC's annual FOIA reports from 2017 and 2018 reveal what a "diligent" response from the Commission would look like. In 2017, the median response time for an expedited processing request was 19 days. Fed. Trade Comm'n, Freedom of Information Act Annual Report 21 (2017).[1] In 2018, the median response time for an expedited processing request was 48 days. Fed. Trade Comm'n, Freedom of Information Act Annual Report 19 (2018).[2] The FTC did not even agree to a *schedule* for production of records responsive to categories 4 and 5 of EPIC's FOIA Request until July 26, 2018, 128 days after EPIC filed the request.

---

[1] https://www.ftc.gov/system/files/documents/reports/foia-report-fy17/2017r-fo.pdf.
[2] https://www.ftc.gov/system/files/documents/reports/foia-report-fy18/2018r-fo.pdf.

EPIC is entitled to recover fees in this case. The Commission does not contest that EPIC would be eligible and entitled to recover fees-on-fees if EPIC prevails on this fee motion.

## CONCLUSION

For the forgoing reasons, the Court should grant EPIC's Motion for Partial Summary Judgment on attorney's fees and costs because it has substantially prevailed in this case and is eligible and entitled to attorney's fees under the FOIA.

Date: December 20, 2019

Respectfully Submitted,

MARC ROTENBERG (DC Bar # 422825)
EPIC Executive Director

*/s/ Alan Jay Butler*
ALAN JAY BUTLER (DC Bar #1012128)
EPIC General Counsel

Enid Zhou (DC Bar # 1632392)
EPIC Open Government Counsel

Electronic Privacy Information Center
1519 New Hampshire Ave NW
Washington, DC 20036
202-483-1140
butler@epic.org

*Counsel for Plaintiff*