UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER,<br><br>      Plaintiff,<br><br>v.<br><br>FEDERAL TRADE COMMISSION,<br><br>      Defendant. | Civil Action No. 18-00942<br>TJK/DAR |

**REPORT AND RECOMMENDATION**

Plaintiff, Electronic Privacy Information Center, brought this action against Defendant, the Federal Trade Commission, on April 20, 2018, for injunctive and other relief pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. *See* Complaint (ECF No. 1) at 1. The parties have since "reached an agreement in principle to resolve the merits of EPIC's FOIA claims." Joint Status Report (Nov. 4, 2019) (ECF No. 27) at 1. Plaintiff filed a motion for partial summary judgment to resolve the only remaining issue, attorney fees and costs. *See* Plaintiff's Motion for Partial Summary Judgment on Attorney's Fees and Costs ("Plaintiff's Motion") (ECF No. 28). Plaintiff's Motion was referred to the undersigned United States Magistrate Judge for a Report and Recommendation. *See* Minute Order (Feb. 10, 2020). Upon consideration of the entire record and, for the reasons that follow, the undersigned recommends that Plaintiff's Motion be denied.

Electronic Privacy Information Center v. Federal Trade Commission

**BACKGROUND**

On March 20, 2018, Plaintiff made a FOIA request to Defendant.  *See* Exhibit A, Stearns Declaration ("FOIA Request") (ECF No. 29-2).  Plaintiff represented that Defendant had issued a "Preliminary Order against Facebook in 2011 and then a Final Order in 2012" related to Facebook's alleged failure to keep promises to consumers related to the privacy of Facebook user information.  *See id.* at 2-3.  Pursuant to the 2012 Final Order, Defendant required Facebook to implement a privacy program which would be assessed through biennial reports produced to Defendant.  *Id.* at 4-5.  Plaintiff's FOIA request included five categories of records relevant to these assessments:

> (1) The 2013 Facebook Assessments;
> (2) The 2015 Facebook Assessments;
> (3) The 2017 Facebook Assessments;
> (4) All records concerning the person(s) approved by the FTC to undertake the Facebook Assessments; and
> (5) All records and communications between the FTC and Facebook regarding the Facebook Assessments.

*Id.* at 1.

In response to the FOIA requests of Plaintiff and others, Defendant released records responsive to the first three categories to Defendant's "online reading room" website with "redactions" on April 16, 2018.  *See* Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Partial Summary Judgment on Attorney's Fees and Costs ("Defendant's Opposition") at 14-19, 15 ("Statement of Undisputed Material Facts"); Plaintiff's Reply at 4-6 (not disputing that Defendant's assertions with respect to the first three categories).  One day later, on April 17, 2018, Defendant informed Plaintiff via email that it would "be unable to respond . . . within the statutory 20-business day deadline as codified un 5 U.S.C. § 552(a)(6)(A)(i)."  Email from Jonathan Hill to Enid Zhou, Exhibit C, Stearns Declaration (the

Electronic Privacy Information Center v. Federal Trade Commission

"Initial FOIA Response") (ECF No. 29-2).  Defendant asserted that two "unusual circumstances" applied to Plaintiff's request such that an extension of the deadline was appropriate.  *Id.*  Specifically, Defendant maintained that it would need to search offices that were separate from the office processing Plaintiff's request and that Defendant would need to consult with other agencies or agency components with a substantial interest in the requested material.  *Id.*

Plaintiff filed its Complaint on April 20, 2018.  Statement of Undisputed Material Facts at 15.  Defendant filed an answer on May 24, 2018.  *Id.* at 16.  On June 5, 2018, the Court ordered the parties to "file a joint proposed schedule for briefing or disclosure by June 26, 2018."  Minute Order (June 5, 2018).  The parties informed the Court that on June 26, 2018, Defendant released further records under its webpage dedicated to frequently requested documents.  Joint Status Report (June 26, 2018) (ECF No. 7); *see also* Declaration of Dione Jackson Stearns ("Stearns Declaration") (ECF No. 29-1) ¶ 27.  Through the course of several further court-ordered status reports, Defendant shared that it had located other responsive records and identified a timeline for when those records would be released.  *See, e.g.*, Joint Status Report (July 26, 2018) (ECF No. 8).  Later, the parties shared that Defendant had released responsive records as of October 19, 2018 and that the "substantive issues in the action" had been resolved.  *See* Joint Status Report (Sept. 27, 2019) at 1.  During the pendency of this action, Defendant ultimately released 152 pages of records responsive to the fourth category of Plaintiff's request and 452 partially redacted pages of records responsive to the fifth category.  Statement of Undisputed Material Facts at 18-19.  Defendant also supplemented its original production in response to categories one through three to include 194 additional pages.  Stearns Declaration ¶ 27.

Electronic Privacy Information Center v. Federal Trade Commission

**CONTENTIONS OF THE PARTIES**

Plaintiff argues that it is eligible to recover fees and costs for two reasons. First, pointing to a minute order, Plaintiff maintains that it obtained a court order which obligated Defendant to produce records. *See* Memorandum of Points and Authorities in Support of Plaintiff's Motion for Partial Summary Judgment on Attorney's Fees and Costs ("Plaintiff's Memorandum") (ECF No. 28-1) at 11-13. Second, Plaintiff relies on the "catalyst theory" of causation to argue that its lawsuit "accelerated the search for responsive records" and caused records to be released that might not have otherwise been released due to Facebook's opposition. *Id.* at 13-15.

Plaintiff argues that it is entitled to recover fees and costs because all four factors that this Court must consider weigh in favor of granting Plaintiff's Motion. *Id.* at 15-16. In arguing that the first factor, the public benefit, weighs in Plaintiff's favor, Plaintiff contends that it furthered the public's interest in whether Facebook has complied with Defendant's orders and, in so doing, aided the public's "fund of information" concerning privacy debates and the effectiveness of Defendant's actions. *Id.* at 16-18. Plaintiff maintains that the second and third factors, the nature of Plaintiff's interest in the records and the commercial benefit to Plaintiff, weigh in favor of granting Plaintiff's Motion because Plaintiff is a non-profit research organization and the release of records benefitted only the public. *Id.* at 18. Plaintiff argues that the fourth factor weighs in favor of Plaintiff because Defendant had no reasonable legal basis to withhold responsive documents. *Id.* at 19. Plaintiff lastly asserts that it is also entitled to recover fees incurred in briefing its instant motion. *Id.*

In opposition to Plaintiff's Motion, Defendant argues that Plaintiff is not eligible for an award of attorney fees because the June 30, 2018 Minute Order did not order the production of records. Defendant's Opposition at 6-7. Defendant maintains that, through the Minute Order,

the Court only ordered the parties to file a further status report. *Id.* Defendant contends that Plaintiff's argument concerning the "catalyst theory" of causation must also fail because several factors indicate that Plaintiff's filing of its Complaint did not cause Defendant to release records. *Id.* at 7-8. Defendant maintains that leading up to Plaintiff's FOIA Request and afterwards, Defendant "was working methodically to respond to [Plaintiff's] and other pending requests for the Facebook-related records." *Id.* Relatedly, Defendant argues that Plaintiff did not accelerate the search for responsive records, as the record indicates that Defendant diligently worked to find responsive records, satisfy confidentiality concerns, and ensure that Plaintiff was satisfied with the production of records. *Id.* at 8-11. In responding to Plaintiff's arguments concerning entitlement to attorney fees, Defendant does not address the first three factors, but instead, argues that the fourth factor should be dispositive and weighs against a finding of entitlement because Plaintiff does not claim that Defendant withheld or opposed disclosure of responsive documents. *Id.* at 11-12.

In reply, Plaintiff disputes Defendant's characterization of Plaintiff's Complaint as untimely. Plaintiff's Reply in Support of Its Motion for Partial Summary Judgment on Attorney's Fees and Costs ("Plaintiff's Reply") (ECF No. 30) at 2. Plaintiff also points to several facts which it contends Defendant ignored in its Opposition. *Id.* at 2-3. In support of its argument that it is entitled to recover attorney fees, Plaintiff argues that the Court's minute order "was clearly an operationalization of the parties' proposed production schedule," and thus was a court order which changed the legal relationship between Plaintiff and Defendant. *Id.* at 3-4. Further, Plaintiff maintains that its "catalyst theory" is supported by Defendant's release of records responsive to the fourth and fifth categories of its FOIA Request. *Id.* at 4-5. Plaintiff argues that despite Defendant's request for records from agency components, Defendant never

5

proposed a schedule for responding to these records until this litigation. *Id.* Plaintiff further submits that there was no cause for Defendant's delay because Plaintiff's request was not overly broad and Defendant's consultation with private parties was not required by law. *Id.* at 6-8.

Lastly, Plaintiff argues that Defendant has conceded that the first three factors determining entitlement to attorney fees weigh in favor of entitlement. *See id.* at 8. Plaintiff maintains that Defendant misconstrues the law regarding the fourth factor because the fourth factor can only be dispositive where "the legal basis for holding the records is correct." *Id.* at 8-9 (citations omitted). Moreover, Plaintiff argues that Defendant misconstrues the facts because Defendant was not diligent in responding to Plaintiff's FOIA Request. *Id.* at 9.

**STATUTORY FRAMEWORK**

In a FOIA action, a court "*may* assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." *Morley v. CIA,* 894 F.3d 389, 391 (D.C. Cir. 2018) (citing 5 U.S.C. § 552(a)(4)(E)(i)) (emphasis added). A court determining whether to assess attorney fees must consider two questions: whether the plaintiff is "eligible" for an award of fees and costs, and if so, whether the plaintiff is "entitled" to such an award. *See, e.g., Coffey v. United States Bureau of Land Mgmt.*, No. CV 16-00564 CRC/DAR, 2018 WL 5044247, at *2 (D.D.C. Aug. 31, 2018), *adopted*, 2018 WL 5044243 (D.D.C. Oct. 1, 2018) (citing *Codrea v. Bureau of Alcohol, Tobacco, Firearms and Explosives*, 272 F. Supp. 3d 49, 52 (D.D.C. 2017) and *Conservation Force v. Jewell*, 160 F. Supp. 3d 194, 201 (D.D.C. 2016)). Thus, a court "evaluates, first, whether the plaintiff 'substantially prevailed,' such that the plaintiff is 'eligible' for attorney fees, and, if so, then evaluates whether certain factors suggest the plaintiff is

'entitled' to attorney fees." *Codrea*, 272 F. Supp. 3d at 52 (citations and internal quotation marks omitted); *see also Conservation Force*, 160 F. Supp. 3d at 202 (a plaintiff who demonstrates eligibility to recover fees and costs "must next" demonstrate entitlement) (citation omitted).

> To satisfy the eligibility requirement, a plaintiff must show that he or she "substantially prevailed" in the underlying FOIA litigation by gaining relief from either: "(I) a judicial order, or an enforceable written agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not substantial." 5 U.S.C. § 552 (a)(4)(E)(ii). Under the first prong, the claimant substantially prevails when 'the order changed the legal relationship between [the parties],' and [ ] the plaintiff 'was awarded some relief on the merits of his claim.'" *Judicial Watch, Inc. v. FBI*, 522 F.3d 364, 367 (D.C. Cir. 2008) (internal quotation marks omitted) (quoting *Davy v. CIA* ("*Davy I*"), 456 F.3d 162, 165 (D.C. Cir. 2007)). Under the second prong, or "catalyst theory," attorney's fees may be awarded solely due to a change in an agency's positions, for example, when the plaintiff's lawsuit "substantially caused the government to release the requested documents before final judgment." *Brayton*, 641 F. 3d at 524-25; *Elec. Privacy Info Ctr. V. U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 216, 232 (D.D.C. 2011) ("The key question under this 'catalyst theory' is whether "the institution and prosecution of the litigation cause[d] the agency to release the documents obtained during the pendency of the litigation.'" (alteration in original) (quoting *Church of Scientology of Cal. V. Harris*, 653 F.2d 584, 587 (D.C. Cir. 1981))).

*Poitras v. Dep't of Homeland Sec.*, Civil Action No. 15-1091 (BAH), 2019 WL 1569561, at *5 (D.D.C. Apr. 11, 2019). Ultimately, "the question is whether hard evidence—beyond temporal proximity—supports the inference that the plaintiff's lawsuit caused the document release or other requested relief." *Conservation Force*, 160 F. Supp. 3d at 206.

**DISCUSSION**[1]

---

[1] Plaintiff moves for attorney fees and costs pursuant to two separate Federal Rules of Civil Procedure which provide two distinct standards for review. *See* Plaintiff's Motion at 1 (citing Federal Rules of Civil Procedure 54(d) and 56(a)). The undersigned construes Plaintiff's Motion as a motion for attorney fees and costs pursuant to Rule 54(d) and 5 U.S.C. § 552(a)(4)(E)(i). *See Gerhard v. Fed. Bureau of Prisons*, 258 F. Supp. 3d 159, 164 (D.D.C. 2017) (construing *pro se* party's opposition to motion for summary judgment as a motion for costs); *Gardill v. Dist. of Columbia*, 930 F. Supp. 2d 35, 37 n.1 (D.D.C. 2013) (indicating, in action under the Individuals with Disabilities Education Act, that "the typical summary judgment standard is inapplicable" to a motion for attorney fees because statutory provisions govern the standard of review). In so doing, the undersigned evaluates the record as a whole and does not view the facts in the light most favorable to the non-moving party. Under a summary judgment

Electronic Privacy Information Center v. Federal Trade Commission

### A. Plaintiff Is Not Eligible for Attorney Fees and Costs

#### 1. Plaintiff Did Not Obtain an Order Obligating Defendant to Produce Records By a Certain Date

A FOIA plaintiff is eligible for attorney fees and costs if the requester "has substantially prevailed . . . through . . . a judicial order[.]" 5 U.S.C. § 552(a)(4)(E)(ii). A joint stipulation approved by a court can be such a judicial order. *See Judicial Watch, Inc. v. Dep't of Justice*, 774 F. Supp. 2d 225, 227-29 (D.D.C. 2011) (collecting cases and holding that, where a parties' stipulation is approved by a court and the court orders an agency to complete production by a certain date, the court has entered a "judicial order" for eligibility purposes). A stipulation approved by a court is a "judicial order" if, after the approval of the stipulation, an agency is under "judicial direction to produce documents by certain dates" or otherwise be subject to contempt sanctions. *Judicial Watch, Inc. v. F.B.I.*, 522 F.3d 364, 368 (D.C. Cir. 2008) (quoting *Davy*, 456 F.3d at 166). Where a court enters an order without requiring production by a certain date, however, such an order does not create eligibility. *See Summers v. Dep't of Justice*, 569 F.3d 500, 505 (D.C. Cir. 2009) (holding that "status reports do not affect a 'court-ordered change in the legal relationship between the plaintiff and the defendant'"); *Conservation Force*, 160 F. Supp. 3d at 204 (D.D.C. 2016) (holding that an order requiring an agency to either justify withholdings or produce documents was not a "production order").

The order at issue here required the parties to "file another joint status report by October 20, 2018." Minute Order (July 30, 2018). Just as the orders in *Summers* did "no more than to join with the plaintiff in filing status reports updating the court[,]" the July 30, 2018 Minute

---

standard, the undersigned would still recommend that Plaintiff's Motion be denied because, drawing "all justifiable inferences" in favor of Defendant, Defendant has demonstrated that material facts preclude summary judgment in Plaintiff's favor concerning Plaintiff's eligibility for and entitlement to attorney fees and costs. *Aguiar v. Drug Enf't Admin.*, 865 F.3d 730, 735 (D.C. Cir. 2017) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

Order did not create "a court-ordered change in the legal relationship between the plaintiff and the defendant." 569 F.3d at 505. While Defendant predicted, and the parties anticipated, certain dates for production of records in a previous status report, these were not the kind of unequivocal stipulations to produce records that were at issue in *Judicial Watch*. *Compare* Joint Status Report (ECF No. 8) ("The FTC currently estimates that the final release will be made on or before October 10, 2018.") *with Judicial Watch*, 774 F. Supp. 2d at 228 ("On or before September 15, 2006, DOJ shall complete production of all records responsive to Plaintiff's January 6, 2006 Freedom of Information Act request that are not subject to claims of exemption."). More importantly, the Court did not order any production in the July 30, 2018 Minute Order. *Compare* Minute Order (July 30, 2018) ("[I]t is hereby ORDERED that the parties shall file a further joint status report by October 28, 2019.") *with Judicial Watch*, 774 F. Supp. 2d at 228 (indicating that the court "approve[d] of the parties' stipulations" and ordered that "the parties shall be governed by the deadlines set forth therein"). Thus, the undersigned finds that the July 30, 2018 Minute Order was not a "judicial order" within the ambit of 5 U.S.C. § 522(a)(4)(E)(ii).

    **2. Plaintiff Is Not Eligible For Attorney Fees and Costs Under a "Catalyst Theory"**

A FOIA plaintiff may also be eligible for attorney fees and costs if the plaintiff "obtained relief through . . . a voluntary or unilateral change in position by the agency, if the [plaintiff]'s claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii). Under this "catalyst" theory, a plaintiff is eligible if the plaintiff's suit "substantially caused the government to release the requested documents before final judgment." *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 524-25 (D.C. Cir. 2011). "Although 'the mere filing of the complaint and the subsequent

release of documents is insufficient to establish causation,' . . . 'it is certainly a salient factor' in the analysis[.]" *Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec.*, 811 F. Supp. 2d 216, 232 (D.D.C. 2011) (citations omitted). If an "unavoidable delay accompanied by due diligence in the administrative process was the actual reason for the agency's failure to respond to a request, then it cannot be said that the complainant substantially prevailed in [its] suit." *Id.* (citing *Church of Scientology of California v. Harris*, 653 F.2d 584, 587 (D.C. Cir. 1981)). The issue of whether delay is unavoidable, or accompanied by due diligence, is a case-specific determination, which takes into account the scope of a FOIA plaintiff's request; whether the agency has been transparent; the nature of an agency's backlog; whether the agency began its search for records prior to the FOIA plaintiff filing suit, and the extent of the agency's delays. *See Elec. Privacy Info. Ctr. v. United States Dep't of Homeland Sec.*, 218 F. Supp. 3d 27, 42-43 (D.D.C. 2016) (collecting cases and holding that agency's "lack of transparency," minimal work prior to FOIA Plaintiff filing suit, and unreasonable delays weighed in favor of eligibility).

      Here, Defendant diligently responded to Plaintiff's request before and after Plaintiff filed its Complaint. For all categories of Plaintiff's request, Defendant engaged multiple offices to find responsive documents prior to the filing of Plaintiff's Complaint and collected records from those offices. *See* Stearns Declaration ¶¶ 13-17. Defendant released partial responses to the first, second, and third categories of Plaintiff's request less than a month after Plaintiff sent its request. Statement of Undisputed Material Facts at 15; Plaintiff's Reply at 4-6 (not disputing Defendant's assertions with respect to the first three categories). Defendant, at the same time, was determining whether any documents could be further released in response to the first, second, and third categories. Stearns Declaration ¶ 21. Defendant notified Plaintiff that Defendant would not respond to Plaintiff's request within the 20-day deadline because Plaintiff's

Electronic Privacy Information Center v. Federal Trade Commission

request presented "unusual circumstances."  Initial FOIA Response.  Thus, before Plaintiff filed suit, Defendant was working with reasonable diligence and transparency to respond.  During the course of this brief and uncontentious litigation, Defendant continued to diligently search for and produce, on a rolling basis, responsive documents.  Based on this diligence before and after Plaintiff filed its Complaint, the undersigned finds that Plaintiff's Complaint did not substantially cause or accelerate the production of records here.[2]

To the extent there was some delay, this delay was unavoidable.  Plaintiff urges the Court to find to the contrary, at least with respect to categories four and five of Plaintiff's request, through which Plaintiff sought "[a]ll records concerning the person(s) approved by the FTC to undertake the Facebook Assessments [and] [a]ll records and communications between the FTC and Facebook regarding the Facebook Assessments."  FOIA Request at 1.  For these documents, however, Defendant was obligated to notify both PricewaterhouseCoopers, "the person(s) approved by the FTC to undertake the Facebook Assessments[,]" and Facebook, of the possibility that documents provided to Defendant "may be disclosed," after which these third parties could bring an action "to restrain disclosure."  *Id.*; 15 U.S.C. § 57b-2(c).  Defendant notified Facebook before Plaintiff filed its Complaint and Facebook did, in fact, intervene in this action.  *See* Order (Aug. 28, 2019) (ECF No. 21); Stearns Declaration ¶ 23.  Plaintiff maintains that the law does not "require a consultation period between the agency and private companies."  Plaintiff's Reply at 7.  Nonetheless, if Defendant had not engaged with Facebook and PricewaterhouseCoopers, Defendant risked a lawsuit by either or both of these entities.  Thus,

---

[2] Plaintiff makes a related argument that Defendant never "proposed a schedule for production of category 4 and 5 records" until Plaintiff suggested a schedule during this litigation.  *See* Plaintiff's Reply at 5.  The undersigned finds that this schedule would have likely been the same given the diligence described *supra*.

11

Defendant faced a delay either way and Plaintiff's suggestion that it was avoidable is speculative.

Moreover, Defendant asserts, and Plaintiff does not appear to challenge, that Defendant needed to consult with other offices in order to adequately respond to Plaintiff's request, another factor causing delay. Stearns Declaration ¶¶ 13-17; Initial FOIA Response. In sum, Defendant coordinated with multiple offices within the agency and two interested third parties, all while ensuring that Plaintiff was satisfied with production. Completing this production within six months evinces diligence under these circumstances. Given that these causes for delay would have existed if Plaintiff had not filed suit, the undersigned cannot conclude that Plaintiff's suit caused or accelerated production in this action.

Plaintiff urges the Court to consider *Electronic Privacy Information Center. v. United States Department of Homeland Security* as support for its catalyst theory, but two key facts distinguish that case from the instant action. 218 F. Supp. 3d at 27. First, in the cited action against the Department of Homeland Security, the extent of the agency's delay prior to litigation was extreme and the reasons for delay were inadequate. The agency there received Plaintiff's request on July 26, 2011 and represented that it had, before the filing of the complaint, merely "tasked out the search" and had "discussions" within the agency concerning how to proceed. *Id.* at 42. The agency did not represent to the court "what concrete steps it was taking" before the filing of the complaint and, in fact, conceded that Plaintiff's complaint "accelerated" the search. *Id.* Here, by contrast, Defendant represents that its FOIA Unit categorized Plaintiff's request and sent requests for documents to specific employees within separate offices before Plaintiff filed its Complaint. Stearns Declaration ¶¶ 6-17. Those offices provided parts of Plaintiff's request to the FOIA Unit, which were then uploaded to Defendant's FOIA reading room. *See id.* These are

"concrete steps" showing that Defendant was already responding to Plaintiff's request in a diligent manner. *Elec. Privacy Info. Ctr.*, 218 F. Supp. 3d at 42.

Second, the Department of Homeland Security attempted to argue that the broad scope of Plaintiff's request at issue was the cause of any delay. The court found that this factor weighed in favor of eligibility because the agency waited over a year after receiving the FOIA request to raise the issue. *Id.* at 34, 43. By contrast, Defendant here forthrightly raised the issues causing any delay, worked quickly to resolve them, and released records on a rolling basis. *See* Initial FOIA Response; Joint Status Report (June 26, 2012). Plaintiff nonetheless argues that the lack of broad search terms means that Defendant should have released records earlier, particularly with respect to the fourth and fifth categories of Plaintiff's request. *See* Plaintiff's Reply at 7. Plaintiff is correct that its request was not overbroad; however, that circumstance alone does not render Defendant's delay avoidable. As previously discussed, Defendant released records before Plaintiff filed suit and some minimal delays were unavoidable because Defendant had to notify Facebook and PricewaterhouseCoopers, acquire records across multiple offices, and process hundreds of pages of records. Under these circumstances, the scope of Plaintiff's request neither supports nor detracts from a finding of diligence.

Plaintiff also argues that absent this litigation, Defendant would not have "overcome the opposition of Facebook to release all of the records included in the final production." Plaintiff's Reply at 8. This argument implies a highly speculative chain of causation whereby Plaintiff caused Defendant to cause Facebook to not interfere with Defendant's production of records. The process of notifying Facebook and convincing Facebook not to oppose Defendant's production, however, started prior to Plaintiff filing suit. *See* Stearns Declaration ¶ 23. There is no reason to conclude that Defendant would not have achieved the same result without Plaintiff

filing suit. Thus, the fact that Facebook did not file its own suit or otherwise move to protect information Facebook submitted to Defendant does not support Plaintiff's catalyst theory.

For all of the foregoing reasons, the undersigned finds that Plaintiff is not eligible for an award of attorney fees and costs. The undersigned therefore recommends that Plaintiff's Motion be denied on that ground.

### B. In the Alternative, Plaintiff Is Not Entitled to Attorney Fees and Costs

As Defendant effectively concedes, the first, second, and third factors for entitlement weigh in favor of a finding of entitlement. *See* Defendant's Opposition at 11-12. Nonetheless, the undersigned alternatively recommends denial of Plaintiff's Motion because the fourth factor weighs against such a finding and is dispositive. This "final factor of the fee entitlement analysis concerns 'whether the agency's opposition to disclosure 'had a reasonable basis in law,' and whether the agency 'had not been recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior.'" *Judicial Watch*, 878 F. Supp. 2d at 237 (quoting *Davy*, 550 F.3d at 1162). The purpose of the fourth factor is to "disincentivize requesters from complaining about reasonable withholdings while incentivizing the government to promptly turn over—before litigation is required—any documents that it ought not withhold." *Davy*, 550 F.3d at 1166 (Tatel, J., concurring). The agency bears the burden of demonstrating "that it had a[ ] colorable or reasonable basis for not disclosing the material until after [the plaintiff] filed suit." *Judicial Watch*, 878 F. Supp. 2d at 237 (quoting *Davy*, 550 F.3d at 1163). "If the Government's position is correct as a matter of law, that will be dispositive." *Id.* (citation omitted). If an agency's position is merely "colorable," the fourth factor will not be dispositive but instead will be

14

"weighed along with other relevant considerations in the entitlement calculus." *Id.* (citation omitted).

The only reason that Defendant did not produce records before Plaintiff filed suit was, as Defendant stated in an email to Plaintiff on April 17, 2018, Plaintiff's request presented "unusual circumstances" such that Defendant could not produce all records within twenty days. FOIA Response (citing 5 U.S.C. § 552(a)(6)(B)(iii)). Defendant filed suit three days later. *See* Complaint. Defendant asserts, and Plaintiff does not dispute, that the request necessitated searches within offices other than the FOIA Unit, and required consultation with two or more "agency components." FOIA Response (citing 5 U.S.C. § 552(a)(6)(B)(iii)); *see also* Stearns Declaration ¶¶ 13-17.

As Plaintiff points out, Defendant also should have complied with the FOIA's procedural requirement to provide a "date on which a determination is expected to be dispatched" when first asserting unusual circumstances. Plaintiff's Reply at 2; 5 U.S.C. § 552(a)(6)(B)(i). Nonetheless, the key question here is whether Defendant's withholding of records based on unusual circumstances was "correct as a matter of law." *Judicial Watch*, 878 F. Supp. 2d at 237. There is no dispute that unusual circumstances existed and that, as a result, Defendant had at least three days beyond the typical twenty-day deadline in which to provide a substantive response. 5 U.S.C. § 552(a)(6)(B)(i)-(ii). Defendant was therefore "correct as a matter of law" prior to Plaintiff filing its Complaint. *Judicial Watch*, 878 F. Supp. 2d at 237 (citation omitted). In these circumstances, the fourth factor is dispositive of Plaintiff's entitlement to attorney fees and costs. *See Judicial Watch*, 878 F. Supp. 2d at 237; *see also Davy*, 550 F.3d at 1166 (Tatel, J., concurring) (indicating that a purpose of the fourth factor is to "disincentivize requesters from complaining about reasonable withholdings").

For all of the foregoing reasons, the undersigned finds that Plaintiff is not entitled to an award of attorney fees and costs. The undersigned therefore alternatively recommends that Plaintiff's Motion be denied on that ground.

**CONCLUSION**

For all of the foregoing reasons, it is, on this 16th day of June, 2020,

**RECOMMENDED** that Plaintiff's Motion for Partial Summary Judgment on Attorney's Fees and Costs (ECF No. 28) be **DENIED**.

                                                             _____
                                                             DEBORAH A. ROBINSON
                                                             United States Magistrate Judge

**Within fourteen days, either party may file written objections to this report and recommendation. The objections shall specifically identify the portions of the findings and recommendations to which objection is made and the basis of each such objection. In the absence of timely objections, further review of issues addressed herein may be deemed waived.**